SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-11-0127-PR |
| | ) | |
| Appellee, | ) | Court of Appeals |
| | ) | Division One |
| v. | ) | No. 1 CA-CR 10-0276 |
| | ) | |
| | ) | Maricopa County |
| PATRICK M. FERRERO, | ) | Superior Court |
| | ) | No. CR2009-103770-001DT |
| | ) | |
| Appellant. | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Joseph C. Kreamer, Judge

**REVERSED**
_____

Memorandum Decision of the Court of Appeals, Division One
Filed Apr. 7, 2011

**VACATED AND REMANDED**
_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                    Phoenix
    By   Kent E. Cattani, Chief Counsel
         Criminal Appeals/Capital Litigation
         Robert A. Walsh,
         Assistant Attorney General
Attorneys for State of Arizona

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER               Phoenix
    By   Christopher V. Johns,
         Deputy Public Defender
Attorneys for Patrick Michael Ferrero
_____

**B E R C H**, Chief Justice

¶1      The issue in this case is whether, in a prosecution for sexual offenses, evidence of similar sexual conduct with the

same minor victim is "intrinsic evidence" that is not governed by Arizona Rule of Evidence 404(c). We also consider whether the type of evidence described in *State v. Garner*, 116 Ariz. 443, 569 P.2d 1341 (1977), is inherently intrinsic to the charged act. We conclude that Rule 404(c) does not apply to truly intrinsic evidence, but that *Garner* evidence is not inherently intrinsic.

## I. FACTS AND PROCEDURAL BACKGROUND

¶2 Patrick Ferrero was charged with three counts of sexual conduct with a minor. Over Ferrero's objection, the trial court admitted evidence of "other uncharged acts" with the minor to show Ferrero's "sexual disposition" toward him. Although the judge did not screen the evidence under Rule 404(c), he nonetheless instructed the jurors that they could consider the evidence to establish that Ferrero had a character trait "that predisposed him to commit the crimes charged." The jury found Ferrero guilty on all three counts.

¶3 The court of appeals reversed Ferrero's convictions on two counts and found any error as to the third count (which is not before us) harmless. The court held that the trial judge must screen "*Garner* evidence" under Rule 404(c) and its failure to do so required reversal. *State v. Ferrero*, 1 CA-CR 10-0276, 2011 WL 1326208, at *4 ¶ 16 (Ariz. App. Apr. 7, 2011) (mem. decision).

- 2 -

¶4      We granted the State's petition for review because the proper interpretation of Rule 404 is an issue of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes § 12-120.24 (2003).

## II.  DISCUSSION

¶5      Rule 404 controls the admission of character and "other act" evidence. Section 404(b) *prohibits* evidence of other crimes, wrongs, or acts to prove the defendant's character to act in a certain way, but may allow such evidence for other purposes, such as showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b).

¶6      Section 404(c) applies to propensity evidence in sexual misconduct cases. It expressly *permits* evidence of other similar crimes, wrongs, or acts to prove the defendant's character trait giving rise to an aberrant sexual propensity to commit the charged offense, but only if the court first makes specific findings.[1] *Id.* 404(c)(1).

---

[1]     The state must prove that the defendant committed the other act, that the other act provides a reasonable basis from which the jurors may infer that the defendant had the propensity to commit the charged act, and that the value of the other act evidence is not substantially outweighed by prejudice to the defendant. *See* Ariz. R. Evid. 404(c)(1)(A)-(D); *see also id.*, cmt. to 1997 amd. (citing *State v. Terrazas*, 189 Ariz. 580, 584,

¶7        Arizona opinions provide imprecise guidance about the proper application of sections (b) and (c) of Rule 404, particularly in sex offense cases.  We therefore take this opportunity to clarify the terms *"Garner* evidence" and "intrinsic evidence" and address the application of Rule 404 to such evidence.

### A.    *Garner* Evidence

¶8        We begin by addressing what has become known as *"Garner* evidence."  *See Garner*, 116 Ariz. at 447, 569 P.2d at 1345.  The defendant in *Garner* was charged with sexually assaulting his minor son.  *Id.* at 445, 569 P.2d at 1343.  To prove the defendant's propensity to commit the charged crime, the prosecutor offered evidence that, on two occasions more than a year before the charged act, the defendant had oral sex with the boy.  *Id.* at 445-46, 569 P.2d at 1343-44.  On review, this Court stated that, "[i]n a case involving a sex offense committed against a child, evidence of a prior similar sex offense committed against the same child is admissible to show the defendant's lewd disposition or unnatural attitude toward the particular victim."  *Id.* at 447, 569 P.2d at 1345 (citing *People v. Sylvia*, 351 P.2d 781, 785 (Cal. 1960)).

¶9        Some courts have read *Garner* as creating an exception

944 P.2d 1194, 1198 (1997) (requiring that commission of the other act be shown by clear and convincing evidence)).

- 4 -

to the common law rule — now codified in Rule 404(b) — barring admission of other acts to prove a defendant's propensity to act in a certain way.[2] *See, e.g., State v. Alatorre*, 191 Ariz. 208, 213, 953 P.2d 1261, 1266 (App. 1998); *State v. Jones*, 188 Ariz. 534, 539, 937 P.2d 1182, 1187 (App. 1996). These courts have interpreted *Garner* as always allowing the admission of evidence of prior sexual acts with the same child victim, even if offered to prove the defendant's propensity to commit the charged act.

¶10    Twenty years after *Garner*, however, this Court promulgated Rule 404(c). *See* Ariz. R. Evid. 404(c), cmt. to 1997 amd. The court of appeals subsequently recognized that automatic admission of *Garner* evidence in cases involving sexual offenses conflicts with 404(c), which permits use of evidence of other acts to show the defendant's "aberrant sexual propensity to commit the crime charged" only if certain criteria are met.

---

[2]    *Garner* cites cases admitting "other act" evidence to show a common scheme or plan and distinguishes the propensity exception created by *State v. McFarlin*, 110 Ariz. 225, 517 P.2d 87 (1973), and *State v. Treadaway*, 116 Ariz. 163, 568 P.2d 1061 (1977). This suggests that the Court may have simply meant to recognize another exception to the common law rule, similar to the exceptions for plan, intent, motive, or opportunity. *See Garner*, 116 Ariz. at 447, 569 P.2d at 1345 (citing *State v. Van Winkle*, 106 Ariz. 481, 482, 478 P.2d 105, 106 (1970) (admitting evidence of prior sexual assaults to show a "system, plan and scheme"); *State v. Finley*, 108 Ariz. 420, 421, 501 P.2d 4, 5 (1972) (similar)); *cf. State v. Vega*, 228 Ariz. 24, 32 ¶¶ 34-35, 262 P.3d 628, 636 (App. 2011) (Thompson, J., concurring). This reading is supported by the comments to Rule 404(c), which do not mention *Garner* and affirmatively state that Rule 404(c) is intended to substantially codify the *McFarlin/Treadaway* rule. Ariz. R. Evid. 404 cmt. to 1997 amd.

*State v. Garcia*, 200 Ariz. 471, 476 ¶ 31, 28 P.3d 327, 332 (App. 2001). Thus, *Garcia* held that *Garner* evidence, which it viewed as necessarily offered to prove the defendant's propensity to act in a certain way, is subject to Rule 404(c) screening. *Id.* The decision below followed *Garcia*. *See Ferrero*, 2011 WL 1326208, at *4 ¶ 15.

¶11 We agree with *Garcia* and the court of appeals in this case that when the prosecution offers *Garner* evidence to prove the defendant's propensity to commit the charged sexual offense, the evidence must be screened under Rule 404(c). That rule supplants *Garner*'s potential exception to the propensity rule. We therefore relegate the term "*Garner* evidence" to shorthand for the type of evidence at issue in that case — "evidence of a prior similar sex offense committed against the same child." *Garner*, 116 Ariz. at 447, 569 P.2d at 1345.

¶12 But we disagree with the court of appeals that "*Garner* evidence" is always subject to Rule 404(c) screening. Rule 404(b) and (c) create a framework for admitting evidence of other crimes, wrongs, or acts that depends in part upon the purpose for which the evidence is offered. As in *Garner*, the State offered other-act evidence here to prove Ferrero's propensity (and the jury was so instructed), but that will not always be the case. *Garner* evidence might also be relevant for non-propensity purposes, such as showing motive, intent,

identity, or opportunity. If the evidence is offered for a non-propensity purpose, it may be admissible under Rule 404(b), subject to Rule 402's general relevance test, Rule 403's balancing test, and Rule 105's requirement for limiting instructions in appropriate circumstances. But if evidence of other sex acts is offered in a sexual misconduct case to show a defendant's "aberrant propensity" to commit the charged act, as it was here, Rule 404(c) applies.

¶13 Rules 404(b) and (c), however, apply only to evidence of "other" crimes, wrongs, or acts. The admissibility of *Garner* evidence therefore depends on a second question — that is, whether the evidence is so intrinsic to the charged act as not to constitute an "other" act.

## B. Intrinsic Evidence

¶14 The intrinsic evidence doctrine arose from Rule 404(b)'s distinction between "charged" and "other" crimes, wrongs, or acts. *See State v. Nordstrom*, 200 Ariz. 229, 248 ¶ 56, 25 P.3d 717, 736 (2001); *see also United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000) (noting that Federal Rule of Evidence 404(b) "creates a dichotomy between crimes or acts that constitute the charged crime and crimes or acts that do not"). Its premise is that certain acts are so closely related to the charged act that they cannot fairly be considered "other" acts, but rather are part of the charged act itself. *See United*

*States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). The doctrine recognizes that excluding evidence of these acts may prevent a witness from explaining the charged act, making the witness's testimony confusing or incoherent. *See Burke v. State*, 624 P.2d 1240, 1250 (Alaska 1980); *People v. Dobek*, 732 N.W.2d 546, 568 (Mich. Ct. App. 2007). Thus, courts have used the doctrine to admit evidence of other acts as intrinsic to the charged act despite the danger that it might also show the defendant's propensity to act in a certain way. *See* Fed. R. Evid. 404(b), cmt. to 1991 amd. (citing *United States v. Williams*, 900 F.2d 823 (5th Cir. 1990)).

¶15     We previously said that "evidence is 'intrinsic' when [1] evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or [2] both acts are part of a 'single criminal episode' or [3] the other acts were 'necessary preliminaries' to the crime charged." *State v. Andriano*, 215 Ariz. 497, 502 ¶ 18, 161 P.3d 540, 545 (2007) (quoting *State v. Dickens*, 187 Ariz. 1, 18 n.7, 926 P.2d 468, 485 n.7 (1996)); *see Nordstrom*, 200 Ariz. at 248 ¶ 56, 25 P.3d at 736 (also quoting *Dickens*). Our opinions in *Andriano* and *Nordstrom* illustrate the narrow scope of this definition.

¶16     In *Andriano*, the defendant was convicted of murdering her husband. 215 Ariz. at 502 ¶ 14, 161 P.3d at 545. We held that evidence of Andriano's extramarital affairs and attempts to

- 8 -

procure insurance on her husband's life was not intrinsic to the murder because Andriano never actually procured the insurance, *id.* at ¶¶ 20-21, and her affairs were unrelated to the murderous act itself, *id.* at 503 ¶ 26, 161 P.3d at 546.

¶17     The connection between the charged and uncharged acts in *Nordstrom* was similarly tenuous.  Nordstrom murdered several people in a bar.  200 Ariz. at 236-38 ¶¶ 1-7, 25 P.3d at 724-26. We rejected the State's argument that Nordstrom's solicitation of another person to burglarize the same bar two years earlier was intrinsic to the subsequent murders.  *Id.* at 248 ¶ 56, 25 P.3d at 736.  We concluded that too much time had passed and the acts were not sufficiently similar.  *See id.*  Thus, although the acts in *Andriano* and *Nordstrom* shared some similarities or connections to the charged acts, we found that the other acts were not inextricably intertwined with, part of the same criminal episode as, or necessary preliminaries to, the charged acts.

¶18     Despite our efforts to narrowly constrain the intrinsic evidence doctrine, some decisions have cited it to justify the admission of evidence that is not truly intrinsic to the charged act.  *See, e.g.*, *State v. Herrera*, 226 Ariz. 59, 64 ¶ 15, 243 P.3d 1041, 1046 (App. 2011).  It has proved difficult for courts to determine when an "other act" is necessarily preliminary to the charged act or when evidence crosses the line from being

admissible as "part of a single criminal episode" as the charged act, to being inadmissible as merely arising "out of the same series of transactions as the charged offense." *See, e.g.*, *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (applying "same series of transactions" test); *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006) (same).

¶19    The Third Circuit noted similar problems in identifying whether evidence is sufficiently "inextricably intertwined" to make it intrinsic, remarking that "the [inextricably intertwined] test creates confusion because, quite simply, no one knows what it means." *Green*, 617 F.3d at 246. In *Green*, the defendant was convicted of attempted possession of cocaine. *Id.* at 237-38. At trial, the court admitted evidence of a bomb plot under the theory that the defendant sought to purchase dynamite and cocaine in the same transaction, so the bomb plot helped explain how the defendant attempted to procure the drugs. *Id.* at 237. The Third Circuit found the evidence admissible for non-propensity purposes under Rule 404(b), *id.* at 252, but it disagreed with the trial court's analysis and held that the evidence relating to the bomb plot was not intrinsic to the attempted cocaine possession, *id.* at 249. After extensively analyzing the pitfalls of the intrinsic evidence doctrine generally, and the "inextricably intertwined" category in particular, the court decided to "reserve the 'intrinsic' label

for two narrow categories of evidence." *Id.* at 248. According to the court, an "other act" is intrinsic only if it (1) "directly proves the charged offense," or (2) is "performed contemporaneously with" and "facilitate[s] the commission of the charged crime." *Id.* at 248-49 (internal citations and quotation marks omitted).

¶20 Given the difficulty Arizona courts have experienced in applying the intrinsic evidence definition we espoused in *Andriano* and *Nordstrom*, we adopt *Green*'s definition. It desirably allows evidence of acts that are so interrelated with the charged act that they are part of the charged act itself without improperly admitting evidence that, although possibly helpful to explain the charged act, is more appropriately analyzed under Rule 404(b) or (c). Henceforth, evidence is intrinsic in Arizona if it (1) directly proves the charged act, or (2) is performed contemporaneously with and directly facilitates commission of the charged act.[3] *See id.* at 248-49. The intrinsic evidence doctrine thus may not be invoked merely to "complete the story" or because evidence "arises out of the

---

[3] Other jurisdictions have entirely abandoned the intrinsic evidence doctrine. *See, e.g.*, *State v. Fetelee*, 175 P.3d 709, 737 (Haw. 2008); *State v. Rose*, 19 A.3d 985, 1010-11 (N.J. 2011). Although the need for the doctrine may be questioned, the parties have not asked that we abandon it, so we do not decide that issue today.

same transaction or course of events" as the charged act.[4]

¶21     Although we intend our definition to be narrow, the varied circumstances in which parties may attempt to admit evidence of other acts makes it impossible to fashion a bright-line test for determining when evidence is intrinsic. Under our definition, however, *Garner* evidence is not inherently intrinsic to the charged act. Although prior sexual contact with the victim may be so closely related to the charged sexual offense that it is intrinsic and thus exempt from Rule 404 analysis, it may also be sufficiently remote and unrelated that it neither proves nor facilitates the charged act.

¶22     The nature of intrinsic evidence as part of the charged act also shows why it is not subject to Rule 404(c) screening. Because Rule 404(c) applies to *other* "crimes, wrongs, or acts," it does not apply if the proponent offers evidence of the charged act itself. By its language, the rule also does not apply if evidence of uncharged acts is offered to show something other than the defendant's propensity to commit the charged act. Rule 404(c) thus does not extend to truly intrinsic acts, which are not "other acts" and are not offered to prove the

---

[4]     Evidence that "completes the story," "arises out of the same transaction" as the charged act, or is "part and parcel" of the charged act may well qualify as intrinsic evidence, but those tests are broader than our formulation and should not be invoked to analyze whether evidence is intrinsic to the charged act.

defendant's propensity to commit the charged act.  Accordingly, intrinsic evidence — including *Garner* evidence that is intrinsic — is not subject to Rule 404(c) screening.

¶23     Our narrow definition of intrinsic evidence will not unduly preclude relevant evidence of a defendant's other acts. Non-intrinsic evidence will often be admissible for non-propensity purposes under Rule 404(b).  *See Andriano*, 215 Ariz. at 502-03 ¶¶ 22-23, 26-27, 161 P.3d at 545-46 (finding evidence of attempts to procure insurance and extramarital affairs not intrinsic, but nonetheless admissible under Rule 404(b) to show plan, knowledge, motive, and intent to kill).  As the court observed in *Green*,

> [I]t is unlikely that our holding will exclude much, if any, evidence that is currently admissible as background or "completes the story" evidence under the inextricably intertwined test.  We reiterate that the purpose of Rule 404(b) is simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person, implying that the jury needn't worry overmuch about the strength of the government's evidence.  No other use of prior crimes or other bad acts is forbidden by the rule, and one proper use of such evidence is the need to avoid confusing the jury.  Thus, most, if not all, other crimes evidence currently admitted outside the framework of Rule 404(b) as "background" evidence will remain admissible under the approach we adopt today. The only difference is that the proponent will have to provide notice of his intention to use the evidence, and identify the specific, non-propensity purpose for which he seeks to introduce it (*i.e.*, allowing the jury to hear the full story of the crime). Additionally, the trial court will be required to give a limiting instruction upon request.

617 F.3d at 249 (citations and internal quotation marks omitted); *see* Ariz. R. Evid. 105 (jury instruction); Ariz. R. Crim. P. 15.1(b)(7) (pretrial notice); *see also Bowie*, 232 F.3d at 927 ("So far as we can tell, the only consequence[] of labeling evidence 'intrinsic' [is] to relieve . . . the court of its obligation to give an appropriate limiting instruction upon defense counsel's request.").

¶24　　　In summary, evidence of the defendant's prior sexual conduct with the child victim of a sexual offense — *Garner* evidence — is not inherently intrinsic; whether it is depends on its relation to the charged acts.  If it is not intrinsic, it may nonetheless be admissible under Rule 404(b) if not offered to prove the defendant's propensity to commit the charged act, or under Rule 404(c) if offered to prove the defendant's propensity to commit the charged act and the proponent satisfies Rule 404(c)'s prerequisites.

## C.　Evidence of Ferrero's Uncharged Acts

¶25　　　The court of appeals correctly held that the trial court erred by failing to subject several categories of other act evidence to Rule 404(c) screening because it was offered to show the defendant's propensity to commit the charged acts.  For example, the trial court, presumably relying on *Garner*, permitted the prosecutor to introduce evidence that on the ride to Ferrero's house on the night of the first charged offense,

Ferrero told the victim to pull down the victim's pants and underwear and expose himself. The victim acceded to Ferrero's demands because Ferrero threatened to leave him on the side of the road if he did not comply. When they arrived at Ferrero's house, the victim talked with Ferrero's mother and played computer games for at least thirty minutes while Ferrero showered. The victim then joined Ferrero in bed, at which time Ferrero completed the first charged act.

¶26    The State offered the exposure evidence to show "that Defendant had the emotional propensity to engage in sexual misconduct" with the victim, and the jury was instructed that the evidence could be used for that purpose. The evidence is facially governed by Rule 404(c) because it involves an uncharged sex act offered "to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." The evidence is therefore exempt from Rule 404(c) screening only if the uncharged act was truly intrinsic to the charged act and thus not an "other act."

¶27    The evidence of this uncharged act does not fit within our narrow definition of intrinsic evidence. The two acts were qualitatively different and constituted two separate instances of sexual abuse. Thus, under the first prong of our definition, forcing the victim to expose himself does not directly prove that Ferrero later committed the charged sexual offense. The

second prong — which requires that the act occur contemporaneously with and directly facilitate the charged act — is equally unavailing. Although forcing the victim to pull down his pants in the vehicle may have facilitated the charged act by weakening the victim's defenses, it did not occur contemporaneously with the charged act. The acts were separated by at least thirty minutes, during which time the victim talked to Ferrero's mother and played computer games.

¶28　　The forced exposure is therefore not intrinsic to the charged act. Because the evidence was offered to prove the defendant's propensity to commit the charged act, the trial court erred in admitting evidence of that act without screening it under Rule 404(c).[5]

### III.　CONCLUSION

¶29　　Although we agree with the court of appeals' result, we disagree with its analysis and therefore vacate its memorandum decision and remand the case for a new trial on the first two counts.[6] If the State seeks to admit evidence of other acts on

---

[5]　Having found the victim's testimony regarding his forced exposure inadmissible absent Rule 404(c) screening, we need not address the remaining uncharged acts. On remand, however, the State may seek admission of the other uncharged acts pursuant to the framework outlined above.

[6]　By remanding for a new trial with instructions for the trial court to consider whether the evidence was intrinsic to the charged acts, the court of appeals implicitly found that the trial court's failure to screen the evidence of other acts under

- 16 -

remand, the trial court must determine whether the evidence is offered to prove Ferrero's propensity. If the evidence is offered for a legitimate non-propensity purpose, the trial court may admit it under Rule 404(b), subject to the other rules of evidence. If, however, the evidence is offered to prove propensity, the trial court must screen it under Rule 404(c).

_____
Rebecca White Berch, Chief Justice

CONCURRING:

_____
Andrew D. Hurwitz, Vice Chief Justice

_____
W. Scott Bales, Justice

_____
A. John Pelander, Justice

_____
Robert M. Brutinel, Justice

_____

Rule 404(c) was not harmless error. In its petition for review, the State challenged the court of appeals' refusal to conduct an explicit harmless error analysis, but we did not grant review on that issue.

- 17 -