311 P.3d 1105

**STATE of Arizona, Appellee,**

v.

**Roberto Alejandro SALAMANCA, Appellant.**

**No. 1 CA–CR 12–0749.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 29, 2013.

Thomas C. Horne, Attorney General By Joseph T. Maziarz, Chief Counsel, Criminal Appeals/Capital Litigation Section, Craig W. Soland, Assistant Attorney General, Phoenix, Attorneys for Appellee.

The Law Office of Kyle T. Green P.L.L.C. By Kyle Green, Mesa, Attorneys for Appellant.

## OPINION

JOHNSEN, Chief Judge.

¶1 Roberto Alejandro Salamanca argues the superior court erred by admitting two text messages he sent moments before he

crashed his car into another vehicle, fatally injuring the other driver. We affirm the court's ruling that one text message was intrinsic to the charged crimes and conclude the other was admissible pursuant to Arizona Rule of Evidence 404(b).

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Driving along Route 66 toward downtown Flagstaff, Salamanca weaved in and out of traffic at about twice the posted speed limit.[1] He lost control of his sport utility vehicle, which fishtailed across five lanes into oncoming traffic, colliding head-on with another vehicle. Witnesses quickly called 9–1–1. The other driver died of injuries sustained in the collision.

¶ 3 Breath and blood samples taken shortly after the collision revealed Salamanca had alcohol levels of more than twice the legal limit. A cell phone found on the floorboard below the front passenger seat of Salamanca's SUV showed two text messages were sent from the phone shortly before authorities received the 9–1–1 call. The first message said, "I hope u die fuckwn stupid puycj"; the second, "Fuck u stupid bitch." Both texts were sent to Salamanca's girlfriend, with whom he had argued the night of the collision.

¶ 4 Salamanca was charged with second-degree murder, failure to remain at the scene of an accident involving death or personal injuries, underage consumption of liquor, criminal damage and two counts of driving under the influence. Before trial, the State moved to admit the two text messages, arguing they were intrinsic to the charged acts and demonstrated that Salamanca was angry and distracted at the time of the collision. The State also moved to admit evidence that within a year before the collision, Salamanca had completed a defensive driving program that included information about the dangers of speeding and driving while intoxicated.

¶ 5 The court granted both motions but directed the State to refrain from mentioning the words "driving school" or the reasons Salamanca took the driving class. At trial the two text messages were admitted and the jury was read the following statement:

> In order to satisfy Arizona's driver's license requirements, Roberto Salamanca was required to take and pass a test which covered driver's safety issues. The test materials included the following warnings about the risks of driving while impaired: "Alcohol and driving do not mix. The driver who drinks causes accidents, injuries and death. Driving is a serious business that requires the ultimate in skill and judgment, both of which are diminished through consumption of alcohol. Alcohol seriously reduces your reflexes, physical control over the vehicle, and ability to recognize dangerous situations. These combined physical affects make the ... drinking driver a dangerous driver."
>
> . . .
>
> The test materials included the following warnings about the risks of speeding: "speed kills. For every 10 miles per hour over 50 miles per hour the risk of death in a traffic crash is doubled."

¶ 6 The jury convicted Salamanca of manslaughter, driving under the influence of alcohol, driving under the extreme influence of alcohol, leaving the scene of an accident, underage consumption of alcohol and criminal damage. He was sentenced to a total of 22.5 years in prison.

¶ 7 Salamanca timely appealed his convictions. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2013), 13–4031 (2013) and –4033(A)(1) (2013).[2]

## DISCUSSION

### A. Standard of Review.

¶ 8 We review a superior court's ruling on the admissibility of evidence for

---

1. "We view the facts and all reasonable inferences therefrom in the light most favorable to upholding the verdicts." *State v. Molina*, 211 Ariz. 130, 132, ¶ 2, 118 P.3d 1094, 1096 (App. 2005) (citation omitted).

2. Absent material revision after the date of an alleged offense, we cite a statute's current version.

abuse of discretion. *State v. Aguilar,* 209 Ariz. 40, 49, ¶ 29, 97 P.3d 865, 874 (2004). Under that standard, "we uphold a decision if there is 'any reasonable evidence in the record to sustain it.'" *State v. Butler,* 230 Ariz. 465, 472, ¶ 28, 286 P.3d 1074, 1081 (App.2012) (quoting *State v. Morris,* 215 Ariz. 324, 341, ¶ 77, 160 P.3d 203, 220 (2007)).

### B. The Text Messages.

¶ 9 The State called a forensic expert who testified that, according to digital data stored in Salamanca's cell phone, the first text message was sent 2 minutes and 15 seconds before the 9–1–1 call was received; the second text was sent 59 seconds before the 9–1–1 call. Salamanca argues the superior court erred in concluding the two text messages were admissible as intrinsic to the charged acts. He contends the text messages were not intrinsic and should have been precluded pursuant to Arizona Rule of Evidence 404(b).

¶ 10 Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's character or "to show action in conformity therewith." Such evidence may be admissible, however, when offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b).

¶ 11 Intrinsic evidence is evidence that "(1) directly proves the charged act, or (2) is performed contemporaneously with and directly facilitates commission of the charged act." *State v. Ferrero,* 229 Ariz. 239, 243, ¶ 20, 274 P.3d 509, 513 (2012). Intrinsic evidence is admissible without regard to Rule 404(b) because the "acts are so closely related to the charged act that they cannot fairly be considered 'other' acts, but rather are part of the charged act itself." *Id.* at 242, ¶ 14, 274 P.3d at 512.

¶ 12 The superior court did not abuse its discretion by concluding that the second text was close enough in time to the collision that it was intrinsic to the charged offense. The jury could have concluded the second text in fact caused the collision—that the act

of sending the text, or the act of handling his cell phone directly after having sent the text, caused Salamanca to lose control of his vehicle. Viewing the evidence in that fashion, the superior court did not abuse its discretion in finding that the second text was "performed contemporaneously with and directly facilitates commission of the charged act." *Id.* at 243, ¶ 20, 274 P.3d at 513.

¶ 13 Although the State does not argue the other text caused the collision, it contends that text was intrinsic because it "directly proves the charged act" by demonstrating that Salamanca was distracted and angry just moments before he lost control of his car. Given that Salamanca sent the text more than two minutes before the 9–1–1 call, whether that text might directly prove he committed a charged act may be a close question. But non-intrinsic evidence may be admitted under Rule 404(b) to show a defendant's state of mind, and these facts demonstrate the fine line between state-of-mind evidence admissible under Rule 404(b) and evidence that is admissible without regard to Rule 404(b) as intrinsic because it may "directly prove" a defendant's mens rea (e.g., that the defendant drove recklessly). We need not decide whether the text sent 2 minutes and 15 seconds before the 9–1–1 call was intrinsic because we conclude it was admissible pursuant to Rule 404(b) in that it demonstrated Salamanca's state of mind (he was distracted and angry) less than three minutes before the collision. *See* Ariz. R. Evid. 404(b) (allowing other-act evidence offered to prove "motive, opportunity, intent ... or absence of mistake or accident").[3]

¶ 14 Although Rule 404(b) requires the court to find by clear and convincing evidence that the other act "was committed and that the defendant committed it," *State v. Prion,* 203 Ariz. 157, 163, ¶ 37, 52 P.3d 189, 195 (2002), Salamanca never disputed having sent the text messages. Because the superior court held both text messages were intrinsic to the charged offense, Salamanca did not request a limiting instruction with respect to either text, and the court did not give one.

---

**3.** We may affirm the superior court "on any grounds which were within the issues." *State v.*

*Dugan,* 113 Ariz. 354, 356, 555 P.2d 108, 110 (1976).

*See* Ariz. R. Evid. 105 (if evidence is admitted for one purpose but not for another, upon timely request, court must give limiting instruction). Given that the court properly admitted the second text message as intrinsic evidence, however, the absence of a limiting instruction as to the first text surely did not prejudice Salamanca.

¶ 15 Salamanca further argues the text messages were not relevant because the precise timing of the texts in relation to the collision is unknown. He also argues the State could not prove that he did not send the text messages while he was stopped at a traffic light or a stop sign. Particularly given the testimony of the State's forensic expert witness about the timing of the texts, these arguments by Salamanca go to the weight the jury might give to the texts, not to their admissibility.

¶ 16 Salamanca also contends that even if the text messages were otherwise admissible, the superior court abused its discretion under Arizona Rule of Evidence 403 by refusing to redact the profanity from the texts before allowing the jury to see them. He argues the profanity was unfairly prejudicial and served only to incite the emotions of the jury.

¶ 17 Otherwise admissible evidence may be excluded "if its probative value is substantially outweighed by a danger of ... unfair prejudice." Ariz. R. Evid. 403. Unfair prejudice may exist "if the evidence has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy or horror." *State v. Mott,* 187 Ariz. 536, 545, 931 P.2d 1046, 1055 (1997). "Because the trial court is in the best position to balance the probative value of the challenged evidence against its potential for unfair prejudice," it has broad discretion to make that determination. *State v. Connor,* 215 Ariz. 553, 564, ¶ 39, 161 P.3d 596, 607 (App.2007) (internal quotation omitted).

¶ 18 The superior court did not abuse its discretion in finding that any prejudice that might be caused by allowing the jury to see the unredacted text messages was outweighed by their probative value. The pro-

fanity tended to show that Salamanca was angry as he was driving just before the collision, and a reasonable juror could conclude that this anger caused him to drive recklessly. Accordingly, the nature of the text messages was highly probative of Salamanca's mental state. Further, the mere presence of coarse language in a defendant's statement does not render it inadmissible under Rule 403. *See State v. Fulminante,* 193 Ariz. 485, 502, ¶ 60, 975 P.2d 75, 92 (1999) (profane statement by defendant was admissible notwithstanding Rule 403).

### C. The "Driving School" Evidence.

¶ 19 Salamanca also argues the superior court erred in reading the jury the statement recited above, ¶ 5, because it constituted improper character evidence under Rule 404(b) that allowed the jury to speculate about why he took a defensive-driving course and to improperly conclude that he had a propensity to speed. Salamanca's argument fails, however, because its premise is faulty: The statement made no reference to the term "defensive driving school," Salamanca's driving record, or, indeed, to Salamanca's participation in any driving school.

¶ 20 Moreover, notwithstanding Salamanca's argument to the contrary, the evidence was relevant under Arizona Rule of Evidence 401. It demonstrated his knowledge of the risks of speeding and driving drunk, and therefore bore on whether he committed second-degree murder by causing a death knowingly or recklessly under circumstances manifesting extreme indifference to human life or committed manslaughter by recklessly causing the death of another. *See* A.R.S. §§ 13–1103(A)(1) (2013), –1104(A)(3) (2013); *State v. Woody,* 173 Ariz. 561, 563, 845 P.2d 487, 489 (App.1992) (evidence of prior DUI admissible under Rule 404(b) to prove that defendant's mental state reflected a reckless indifference to human life).[4]

¶ 21 Salamanca nevertheless argues he was unfairly prejudiced pursuant to Rule 403 by the admission of the driver-safety evidence because it may have misled or con-

---

4. A person acts recklessly when he or she "is aware of and consciously disregards a substantial

and unjustifiable risk" of death or serious injury. A.R.S. § 13–105(10)(c) (2013).

fused the jury or caused it to conclude he had the expertise of a professional driver. But the statement only outlined basic knowledge that all Arizona drivers must possess and did not imply that Salamanca had the skills or knowledge of a professional driver. Under the circumstances, the superior court did not abuse its discretion by admitting the evidence.

## CONCLUSION

¶ 22 For the reasons set forth above, we affirm Salamanca's convictions and sentences.

CONCURRING: RANDALL M. HOWE, Presiding Judge, and SAMUEL A. THUMMA, Judge.