NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ESTEBAN OROZCO VARGAS, *Appellant*.

No. 1 CA-CR 17-0196
FILED 7-3-2018

Appeal from the Superior Court in Maricopa County
No. CR2014-124989-001
The Honorable Gregory Como, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Joel M. Glynn
*Counsel for Appellant*

―――――――――――――――

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

―――――――――――――――

**C A T T A N I**, Judge:

**¶1**        Esteban Orozco Vargas appeals his convictions and sentences for two counts of sexual conduct with a minor, two counts of molestation of a child, and two counts of sexual abuse.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        On May 24, 2014, Vargas admitted to the victim's mother ("Mother") that he had sexually touched the victim.  The following day, the victim disclosed to Mother incidents of Vargas engaging in sexual conduct with her.  Mother contacted the police, and Detective Bromund interviewed the victim in English.  During the interview, the victim provided detailed descriptions of, as relevant here, four incidents during which Vargas touched her sexually.  Immediately after the interview, Mother initiated a recorded confrontation telephone call with Vargas.  Mother and Vargas spoke Spanish during the entire call, and Vargas admitted to sexually touching the victim on four occasions.

**¶3**        The State charged Vargas with the offenses listed above, alleged to have occurred between July 1, 2012 and May 27, 2014.[1]  At the initial appearance, the court directed that Vargas be provided with a Spanish language interpreter during court proceedings.

**¶4**        At trial, after the victim and Mother finished testifying, the State sought permission to play a video recording of Detective Bromund's English-language interview with the victim for the jury during the detective's testimony.   The court overruled Vargas's hearsay and Confrontation Clause[2] objections and, pursuant to Arizona Rule of Evidence 803(5), permitted the State to play the video for the jury.  The State

―――――――――――――――

[1]        The State also charged Vargas with one count of attempted sexual conduct with a minor, but the court later dismissed that count with prejudice at the State's request.

[2]        U.S. Const. amend. VI.

provided defense counsel a copy of the video, newly redacted to omit material either precluded by a pretrial ruling or irrelevant to the charged offenses.

¶5        The State played the redacted video of the victim's interview for the jury during Detective Bromund's testimony the next day.  The court interpreter did not translate the video into Spanish (Vargas's predominant language) as it was played, explaining that court interpreters require a transcript of recorded dialogue (which had not been prepared) to translate.

¶6        The jury found Vargas guilty as charged, and the superior court sentenced Vargas to four concurrent, mitigated prison terms, the longest of which is 10 years, to be followed by two consecutive life sentences.  The court granted Vargas's request to file a delayed notice of appeal, and he did so.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033(A).

## DISCUSSION

¶7        Vargas argues that the court erred by allowing the State to play the video recording of the victim's interview for the jury because it was inadmissible hearsay and its admission violated his confrontation rights. We generally review rulings on admissibility of evidence for an abuse of discretion, but we review challenges to admissibility based on the Confrontation Clause de novo.  *State v. King*, 213 Ariz. 632, 636, ¶ 15 (App. 2006); *see also State v. Alatorre*, 191 Ariz. 208, 211, ¶ 7 (App. 1998), *abrogated in part on other grounds by State v. Ferrero*, 229 Ariz. 239, 241–42, ¶¶ 8–13 (2012).

¶8        Rule 803(5) of the Arizona Rules of Evidence provides a hearsay exception for recorded recollections.  To qualify, the recorded recollection must be:

> A record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge.

Ariz. R. Evid. 803(5); *see also Alatorre*, 191 Ariz. 211–12, ¶¶ 9–10.  A video recording may qualify as a "record" for purposes of Rule 803(5).  *See State v. Martin*, 225 Ariz. 162, 165, ¶ 11 (App. 2010).  The record may only be read into evidence, not received as an exhibit for the jury's consideration during deliberations, unless offered by an adverse party.  Ariz. R. Evid. 803(5); *see also Martin*, 225 Ariz. at 165–66, ¶ 13.

3

¶9          Here, the victim had difficulty remembering the circumstances and details of the incidents underlying the charged offenses when testifying at trial. She testified, however, that her memory of the incidents was better at the time of her interview with Detective Bromund—over two years before trial—and she testified that she had responded truthfully to the detective's questions. And the superior court did not admit the recording as an exhibit, but only allowed it to be played for the jury.

¶10         Vargas argues that the video did not satisfy the requirements of Rule 803(5) because the interview was not conducted "contemporaneous[ly]" with the sexual incidents, the victim did not adopt the recording before it was played for the jury, and the victim did not testify that the incidents were fresh in her memory at the time of the interview. But Rule 803(5) contains no requirement that the recorded statement be made contemporaneously with the matter it concerns. Instead, the recorded statement must simply be made or adopted "when the matter was fresh in the witness's memory." Ariz. R. Evid. 803(5)(B). The victim's testimony that her memory was better at the time of the interview than at trial supports the superior court's conclusion that this requirement was satisfied. And because the victim made the statement when the matter was fresh in her memory, the rule does not require that she separately adopt the recording. *See id.* Moreover, the details the victim provided during the interview but was unable to remember while testifying at trial allowed the jury to determine whether the interview statements properly reflected the victim's memory. Vargas's arguments to the contrary go to the video's evidentiary weight, not its admissibility under Rule 803(5).

¶11         Nor did playing the video for the jury violate Vargas's confrontation rights. The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause thus bars admission of testimonial hearsay statements "unless the defense has had an opportunity to cross-examine the declarant." *State v. Parker*, 231 Ariz. 391, 402, ¶ 38 (2013). And here, Vargas in fact cross-examined the victim and Detective Bromund, and he could have asked to recall the victim to testify further after the video was played, but did not do so. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."); *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.").

**¶12** Vargas further argues that using the video without a Spanish translation undermined his confrontation and due process rights. But Vargas does not contend that the State failed to timely disclose the video, nor does he suggest that he requested a Spanish translation of the video before trial. (Notably, the court promptly granted defense counsel's request—made more than 16 months before trial—for English translations of the four Spanish-language interviews and the confrontation call.) Moreover, even on appeal, more than a year after his conviction, Vargas offers no indication of how a Spanish translation of the interview would have allowed him to challenge the veracity of the victim's interview statements, particularly given that his counsel did not ask the victim any questions about the charged acts when cross-examining her. *See Calderon-Palomino v. Nichols*, 201 Ariz. 419, 422, ¶ 6 (App. 2001).

**¶13** Finally, Vargas's reliance on *State v. Rios*, 112 Ariz. 143 (1975), and *State v. Natividad*, 111 Ariz. 191 (1974), is misplaced. Those cases support the general proposition that due process may require that an indigent criminal defendant with limited English proficiency be provided an interpreter at trial. *Rios*, 112 Ariz. at 144–45; *Natividad*, 191 Ariz. at 194. They do not address circumstances in which a pretrial interview was properly disclosed to the non-English-speaking defendant, who did not timely request a translation into the defendant's native language despite having ample opportunity to do so. *See Calderon-Palomino*, 201 Ariz. at 422, ¶ 7.

**CONCLUSION**

**¶14** Vargas's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA