NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ALEXANDER TRAVIS VAUGHAN, *Appellant*.

No. 1 CA-CR 24-0040
FILED 01-02-2025

Appeal from the Superior Court in Mohave County
No. S8015CR202300753
The Honorable Douglas Camacho, Judge *Pro Tem*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Zachary Law Group, PLC, Mesa
By Jessica Zachary
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

_____

**C A T T A N I**, Judge:

¶1　　　　Alexander Travis Vaughan appeals his convictions of seven counts of sexual conduct with a minor and the corresponding sentences. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　Two brothers, G. and K., grew up in Kingman with their mother, stepfather, and sisters. They were unhappy at home because their stepfather was an alcoholic and physically punished them. G. and K. often went to their family friend M.'s house to play video games.

¶3　　　　Over time, the brothers spent almost every weekend at M.'s house. Vaughan was M.'s distant relative and often visited M.'s house on weekends. When G. was 9 years old, and K. was 11 years old, Vaughan (who was 16 years old at the time) moved into M.'s house, sleeping wherever there was room.

¶4　　　　At some point, Vaughan showed the brothers pornography for the first time, which he then did almost every time the brothers were at M.'s house. About six months after introducing the boys to pornography, Vaughan directed them to masturbate (themselves, each other, and Vaughan). Over the next six months, Vaughan started forcing the boys to participate in oral and anal sex. Vaughan threatened to tell the brothers' parents that they were misbehaving if they did not comply.

¶5　　　　Vaughan engaged in anal sex with G. and forced him to perform oral sex on him on multiple occasions, almost every other time G. was at M.'s house. Vaughan forced K. to participate in oral sex at least once every weekend and anal sex about once a month for two years. G. and K.'s family moved away when the boys were 13 and 15 years old, respectively, and there was no further sexual conduct between Vaughan and the brothers.

¶6   G. and K. did not speak with each other or anyone else about the abuse until 2022, when G. disclosed it. Vaughan was indicted on eight counts of sexual conduct with a minor and one count of molestation of a child.

¶7   At trial, both G. and K. testified. G. referenced M.'s presence during the abuse and testified that Vaughan forced M. to watch pornography, masturbate, and have oral and anal sex on multiple occasions alongside G. and K., although he was not present every time. K. also testified that M. participated in watching pornography, masturbation, and oral sex multiple times but was not always present. M. also testified at trial, denying that Vaughan ever forced him to participate in sexual activity. Vaughan testified in his own defense and denied ever engaging in sexual conduct with anyone under age 15.

¶8   Before the case was submitted to the jury, the State moved to amend the date ranges applicable to the charged offenses, and the court granted the motion so the charges read as follows:

> Count 1: sexual conduct with a minor under twelve years of age, committed on or between 2010 and February 10, 2014, relating to sexual intercourse with [G.]
>
> Count 3: sexual conduct with a minor under twelve years of age, committed on or between 2010 and January 26, 2012, relating to sexual intercourse with [K.]
>
> Count 4: sexual conduct with a minor under fifteen years of age, committed on or between February 11, 2014, and April 2015, relating to sexual intercourse with [G.]
>
> Count 5: sexual conduct with a minor under fifteen years of age, committed on or between January 26, 2012, and January 26, 2015, relating to sexual intercourse with [K.]
>
> Count 6: sexual conduct with a minor under twelve years of age, committed on or between 2010 and February 10, 2014, relating to oral sexual contact with [G.]
>
> Count 7: sexual conduct with a minor under twelve years of age, committed on or between 2010 and January 26, 2012, relating to oral sexual contact with [K.]

Count 9: sexual conduct with a minor under fifteen years of age, committed on or between January 27, 2012, and January 26, 2015, relating to oral sexual contact with [K.]

The superior court found count 2 was a lesser-included offense of counts 3 and 5 and merged count 2 into those counts. The court similarly merged count 8 into count 4.

**¶9** The jury convicted Vaughan of all remaining counts. On counts 1, 3, 6, and 7, Vaughan was sentenced to life in prison without the possibility of release until 35 years have been served. On each of counts 4, 5, and 9, Vaughan was sentenced to 20 years in prison. All of Vaughan's sentences run consecutively. Vaughan timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A)(1).

## DISCUSSION

### I. Other Acts or Intrinsic Evidence.

#### A. Admissibility.

**¶10** Vaughan argues the superior court erred by admitting other-act evidence without first making the required findings under Arizona Rule of Evidence ("Rule") 404(c). Because Vaughan did not object at trial and raises this issue for the first time on appeal, we review for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018); *see also State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005).

**¶11** Rule 404 controls the admission of character and other-act evidence, prohibiting evidence of other crimes, wrongs, or acts to prove a defendant's propensity to act in a certain way. Ariz. R. Evid. 404. There is an exception under Rule 404(c) allowing admission of evidence of similar crimes, wrongs, or acts to prove a defendant has an aberrant sexual propensity to commit the charged offense. Ariz. R. Evid. 404(c). But this exception requires the court to make specific findings before such evidence may be admitted. Ariz. R. Evid. 404(c)(1). Rule 404(c) requires the State to disclose its intent to use sexual propensity other-act evidence before trial. Ariz. R. Evid. 404(c)(3).

**¶12** The State argues that no notice or Rule 404(c) findings were necessary because the contested evidence related directly to the charged offenses, and thus fell outside the scope of Rule 404. We agree.

4

¶13          Intrinsic acts are those so closely related to the charged act that they are part of that act itself and thus are not "other" acts. *State v. Ferrero*, 229 Ariz. 239, 242, ¶ 14 (2012). Evidence is "intrinsic" if it (1) directly proves the charged act, or (2) is performed contemporaneously with and directly facilitates the commission of the charged act. *Id.* at 243, ¶ 20. Evidence is not intrinsic if it merely "complete[s] the story" or arises from the same transaction or course of events as the charged act. *Id.* Evidence of a defendant's prior sexual conduct with the same victim of a sexual offense is not inherently intrinsic; whether such evidence is intrinsic depends on its relation to the charged acts. *Id.* at 244, ¶ 24; *see also id.* at 243, ¶ 20 (intrinsic evidence includes "evidence of acts that are so interrelated with the charged act that they are part of the charged act itself," but not "evidence that, although possibly helpful to explain the charged act, is more appropriately analyzed under Rule 404(b) or (c)").

¶14          Vaughan argues eleven parts of G. and K.'s testimony were uncharged other acts and were improperly admitted at trial.[1]

¶15          Nine of the acts Vaughan points out (that Vaughan forced G., K., and M. to watch pornography; forced G. to masturbate in front of Vaughan; forced M. to masturbate in front of and engage in masturbatory contact with Vaughan; forced G., K., and M. to masturbate each other; and requested G. and M. perform oral sex on each other) are likewise intrinsic to the charged offenses. Vaughan engaged in a pattern of conduct beginning with watching pornography, leading to masturbation, oral sex, and anal sex, often in a group setting with at least two of the three younger boys participating. These acts thus all occurred contemporaneously with the charged offenses and directly facilitated Vaughan's commission of the charged acts. The superior court did not err by permitting G. and K.'s testimony about these nine acts, as they directly related to the charged offenses. *See Ferrero*, 229 Ariz. at 245, ¶ 27.

---

[1]          The eleven "other acts" Vaughan takes issue with are as follows: (1) Vaughan forced G. to watch pornography multiple times; (2) Vaughan forced G. to masturbate in front of him; (3) Vaughan forced K. to watch pornography; (4) Vaughan forced M. to watch pornography; (5) Vaughan forced M. to perform oral sex on him; (6) Vaughan forced M. to engage in masturbatory contact with him; (7) Vaughan forced M. to masturbate in front of him; (8) Vaughan engaged in anal sex with M.; (9) Vaughan forced G., K., and M. to masturbate each other; (10) Vaughan requested G. perform oral sex on M.; and (11) Vaughan requested M. perform oral sex on G.

¶16          Finally, testimony about the remaining two acts (that Vaughan forced M. to perform oral sex on him and engage in anal sex with him) appears to relate only to group events that also involved G. or K. Vaughan points to no other instances to support his claim that these were "other acts," and we view the facts in the light most favorable to upholding the jury's verdict.  *State v. Carrasco*, 201 Ariz. 220, 221, ¶ 1 (App. 2001). Vaughan has not established that the superior court abused its discretion by permitting this testimony.

### B.     Jury Instructions.

¶17          Rule 404(c) requires the superior court to instruct the jury regarding the proper use of any admitted other-act evidence.  Ariz. R. Evid. 404(c)(2).  Vaughan argues that the superior court failed to instruct the jury on the permissible use of the testimony detailed above.  But because the eleven instances Vaughan points to on appeal are charged offenses or intrinsic evidence, no Rule 404(c) instruction was required.

## II.    Rape Shield Statute.

¶18          Vaughan argues the superior court erred by precluding M.'s testimony about sexual acts between M., G., and K. when Vaughan was not present.  He claims M.'s testimony would be admissible under A.R.S. § 13-1421 as evidence supporting Vaughan's argument that the victims had a motive to fabricate their claims against him.

¶19          Section 13-1421 allows testimony about specific instances of a victim's prior sexual conduct under the following circumstances:

> 1. Evidence of the victim's past sexual conduct with the defendant.

> 2. Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease or trauma.

> 3. Evidence that supports a claim that the victim has a motive in accusing the defendant of the crime.

> 4. Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue.

> 5. Evidence of false allegations of sexual misconduct made by the victim against others.

A.R.S. § 13-1421(A). This evidence may only be admitted if the court "finds the evidence is relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence." A.R.S. § 13-1421(A).

¶20 Before trial, the State moved to preclude any evidence relating to the victims' chastity. At the hearing, Vaughan indicated that he expected M. to testify that K. and G. committed sexual acts against M., which Vaughan asserted was admissible evidence of a motive to fabricate and would directly negate the allegations against Vaughan. *See* A.R.S. § 13-1421(A)(3). The superior court ruled that if G. or K. testified about a specific instance where M. was present, and M. were to testify he was not present, that evidence would be admissible. But the court concluded that Vaughan had not established that the victims had a motive to fabricate the allegations against him and thus ruled that M. could not testify to any unrelated sexual incident between himself, G., and K. (without Vaughan present) unless there was a clear tie-in to G. and K.'s testimony.

¶21 The parties revisited the issue after the State's expert Amy Heil testified that when an older person sexually abuses a group of children together, the children often act more submissive and do not try to intervene, leave, or tell anyone about the events. Vaughan argued the State opened the door to allow M.'s testimony by eliciting Heil's opinion about victims who do not disclose abuse when confronted. The superior court affirmed its initial ruling, finding that evidence of M.'s sexual encounters with the victims was not relevant and that the risk of confusing the issues and potential prejudice outweighed the probative value of the proposed testimony. Nevertheless, to ensure "candor to the jury," the court ordered that during closing argument, the State could not argue that M. was unwilling to tell his story about any sexual encounters he had.

¶22 The superior court has considerable discretion in determining whether the probative value of evidence is substantially outweighed by its unfairly prejudicial effect. *State v. Gilfillan*, 196 Ariz. 396, 405, ¶ 29 (App. 2000), *abrogated on other grounds by State v. Carson*, 243 Ariz. 463, 465–66, ¶ 10 (2018). The superior court was in the best position to evaluate the evidence. *Id.* at ¶ 33. Here, the court found that M.'s proposed testimony was irrelevant, Ariz. R. Evid. 401, and further found the risk of confusion and prejudice outweighed any probative value it might have had, Ariz. R. Evid. 403. The record evidence did not establish that G. and K. had a motive to fabricate the allegations against Vaughan, and we discern no abuse of discretion.

¶23          Vaughan also argues the superior court's ruling deprived him of his constitutional right to defend against the State's accusations and attack G. and K.'s credibility. But this same type of constitutional argument was considered and rejected in *Gilfillan*. 196 Ariz. at 402–03, ¶¶ 18–23.

## III.    Length of Sentence.

¶24          Vaughan argues that his four consecutive life sentences, plus 60 additional years, violate his constitutional right against cruel and unusual punishment because he was a juvenile for part of the periods during which the offenses were committed. We review constitutional questions de novo. *State v. Soto-Fong*, 250 Ariz. 1, 4, ¶ 6 (2020).

¶25          During the commission of the charged offenses, Vaughan's age was as follows: count 1, 14 to 18 years; count 3, 14 to 16 years; count 4, 18 to 19 years; count 5, 16 to 19 years; count 6, 14 to 18 years; count 7, 14 to 16 years; and count 9, 16 to 19 years. Vaughan did not object on this basis at sentencing, acknowledging the applicable statutory sentencing ranges. On appeal, however, he cites *Graham v. Florida* to support his argument that it is unconstitutional to sentence a defendant to life without parole for a nonhomicide offense when the defendant was below the age of 18 when the offense was committed. 560 U.S. 48, 74 (2010). Vaughan relies on *Graham* in arguing that, because he was a juvenile for much of the time during which he committed these nonhomicide offenses, his actions were not as morally reprehensible as an adult's. *See id.* at 68. He further asserts that the penological justifications for his punishment are insufficient to support a sentence that is essentially life without parole with no meaningful opportunity for release.

¶26          In *State v. Soto-Fong*, the Arizona Supreme Court considered whether consecutive sentences imposed for separate crimes violate the Eighth Amendment's prohibitions against cruel and unusual punishments when the cumulative sentences exceed a juvenile's life expectancy. 250 Ariz. at 3, ¶ 1. The court held that such sentences do not violate the Eighth Amendment. *Id.* Reasoning that *Graham* and its progeny did not involve consecutive sentences arising from multiple crimes, the court held *Graham* did not afford the petitioners relief because their "sentences are not parole-ineligible life sentences for a single conviction, but rather aggregated sentences for multiple crimes." *Id.* at 8, ¶ 27. The *Soto-Fong* court emphasized that because *Graham* and its progeny do not preclude de facto juvenile life sentences, invoking the cases' dicta to extend the jurisprudence would improperly invade the province of the Legislature. *Id.* at 9–10, ¶ 36. Accordingly, Vaughan has not shown an Eighth Amendment violation

based on his aggravated sentences for multiple crimes, and we therefore affirm his sentences.

**CONCLUSION**

¶27      For the foregoing reasons, we affirm Vaughan's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    TM