NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

DUSTIN MICHAEL SOMMERFIELD, *Appellant.*

No. 1 CA-CR 16-0470
FILED 8-22-2017

---

Appeal from the Superior Court in Maricopa County
No. CR2015-107761-001
The Honorable Erin Otis, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

**D O W N I E**, Judge:

¶1          Dustin Michael Sommerfield appeals his conviction and sentence for second-degree murder.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

¶2          While driving home from work at approximately 8:10 p.m. on February 15, 2015, C.F. saw a man come partially out of the passenger window of a green Lincoln Navigator that was directly in front of him.  The man, later identified as Sommerfield, pointed what appeared to be a gun at a truck in the adjacent lane.  The truck veered off into a neighborhood.  Sommerfield withdrew the gun but continued to lean out the window and yell at passing vehicles.

¶3          C.F. called 9-1-1 and followed the Navigator, which was being driven by a woman.  Another truck soon pulled alongside the Navigator, and the Navigator swerved toward the truck, trying to run it off the road.  Sommerfield again came out of the passenger window and appeared to try to throw something at the truck.  After the Navigator turned into a parking lot, a marked patrol vehicle pulled behind it.  When officers activated the vehicle's lights and siren, the Navigator "took off."  The police cruiser initially followed as the Navigator moved erratically through traffic but stopped to allow an air unit to conduct surveillance.  After the patrol car retreated, the Navigator began moving with the flow of traffic, though the driver at times used private property to circumvent stoplights.

¶4          After several blocks, the Navigator stopped, and Sommerfield exited the passenger's side, walked around the vehicle, and got into the driver's side.  While driving the Navigator, Sommerfield turned the headlights off and on.  He ran one red light, drove over a raised median to avoid a second red light, and ran a third red light.  At the next traffic light,

---

[1]          We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

Sommerfield drove into the intersection, heading westbound, and struck a white Dodge traveling southbound. The driver of the Dodge was killed. The female occupant of the Navigator attempted to leave the scene but was apprehended. Officers arrested Sommerfield, who had bloodshot, watery eyes, slurred speech, and a strong odor of alcohol. After obtaining a search warrant, officers drew his blood.

¶5        Sommerfield was charged with second-degree murder. As aggravating circumstances, the State alleged that Sommerfield had a prior felony conviction and was on release at the time of the charged offense.

¶6        The State called numerous witnesses at trial who were stopped at the intersection at the time of the collision. The witnesses consistently testified that the Navigator entered the intersection without headlights. One witness testified she was "positive" the victim had a green light. Another witness testified she assumed the Navigator had a red light based on her understanding of how traffic lights operate.

¶7        The criminalist who analyzed the blood sample testified that Sommerfield's blood alcohol concentration at 12:07 a.m. and 1:15 a.m. was .179 and .163, respectively. Based on a retrograde analysis, the criminalist opined that Sommerfield's blood alcohol concentration was .199 approximately two hours after the accident. The parties stipulated that the victim died as a result of injuries sustained in the collision; she had diphenhydramine and hydrocodone in her system.[2] The criminalist testified there is no specific level at which all individuals are impaired by these drugs and acknowledged that, when combined, the drugs can have an "additive effect" that could potentially affect a person's driving.

¶8        The parties agreed that the primary disputed issue at trial was whether Sommerfield or the victim ran a red light. Sommerfield called the deputy chief medical examiner, who testified that the victim had no contacts or glasses at the time of the autopsy, though her driver's license stated that she required corrective lenses. Sommerfield also called a representative from the Arizona Department of Transportation ("ADOT") who maintains a database for the timing of traffic signals. With respect to the traffic light at issue, the ADOT witness testified it was possible for

---

[2]        Diphenhydramine is an antihistamine also known as Benadryl, and hydrocodone is an opioid pain medication. The victim had a prescription for the hydrocodone.

eastbound and southbound traffic to have a simultaneous red light while westbound traffic had a green light.

¶9 After a 12-day trial, the jury found Sommerfield guilty of second-degree murder. The jury found one aggravating factor: that the offense involved the use of a deadly weapon or dangerous instrument, specifically, a motor vehicle. The trial court sentenced Sommerfield to an aggravated term of 17 years' imprisonment. Sommerfield timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.  Jury Instructions

¶10 Sommerfield contends the trial court erred by declining to give the following jury instructions he requested regarding causation:

**2.03 — Causation Instruction – Intervening Event**

Conduct is the cause of a result when both of the following exist:

1.  But for the conduct the result in question would not have occurred.

2.  The relationship between the conduct and result satisfies any additional causal requirements imposed by the definition of the offense.

In order to find the defendant guilty of second degree murder, you must find that the death was proximately caused by the acts of the defendant.

The proximate cause of a death is a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred.

Proximate cause does not exist if the chain of natural effects and cause either does not exist or is broken by a superseding intervening event that was unforeseeable by the defendant and, with the benefit of hindsight, may be described as abnormal or extraordinary.

4

> The State must prove beyond a reasonable doubt that a superseding intervening event did not cause the death.

> **Intervening Event or Superseding Cause**

> It is a defense to the charge of second degree murder that the victim's death was not the result of any criminal conduct on the part of the defendant, but that it resulted from a superseding cause. In regard to causation, an intervening event becomes a superseding cause only when its occurrence was both unforeseeable and when, with the benefit of hindsight, it may be described as abnormal or extraordinary.

> The State must prove beyond a reasonable doubt that a superseding intervening event did not cause the death.

¶11 The State objected to Sommerfield's proffered instructions, asserting the evidence did not support them. Sommerfield countered that evidence of the victim's possible impairment and failure to wear corrective lenses, as well as the possibility she ran a red light, supported a superseding cause instruction. The trial court disagreed, ruling the evidence did not suggest a superseding cause, but instead addressed "who caused" the collision. Concluding the evidence did not support the requested instructions, the court declined to give them.

¶12 We review the refusal to give requested jury instructions for an abuse of discretion, deferring to the trial court's evaluation of the evidence. *State v. Wall*, 212 Ariz. 1, 3, 5, ¶¶ 12, 23 (2006). A party is entitled to a jury instruction on any theory reasonably supported by the evidence, *State v. Moody*, 208 Ariz. 424, 467, ¶ 197 (2004), but a court does not err by refusing to give an instruction that "does not fit the facts of the particular case, or is adequately covered by the other instructions." *State v. Hussain*, 189 Ariz. 336, 337 (App. 1997); *see also State v. Mott*, 187 Ariz. 536, 546 (1997) ("A trial court is not required to give a proposed instruction when its substance is adequately covered by other instructions."). We review *de novo* whether instructions accurately and adequately state the law. *State v. Fierro*, 220 Ariz. 337, 338, ¶ 4 (App. 2008). We review jury instructions in their entirety and will not reverse based on an erroneous instruction unless the instructions, taken as a whole, reasonably could have misled jurors. *State v. Hoskins*, 199 Ariz. 127, 145, ¶ 75 (2000); *State v. Gallegos*, 178 Ariz. 1, 10 (1994).

¶13 "In Arizona, both 'but for' causation and proximate cause must be established in a criminal case." *State v. Marty*, 166 Ariz. 233, 236

(App. 1990). To establish legal causation under the facts of this case, the State was required to prove that "but for" Sommerfield's conduct, the victim's death would not have occurred. *Id.*; *see also* A.R.S. § 13-203(A)(1) (conduct is the cause of a result when the "result in question" would not have occurred "[b]ut for the conduct" at issue). To establish proximate cause, the State was required to establish "that the difference between the result intended" and "the harm actually suffered" was "not so extraordinary that it would be unfair to hold" Sommerfield responsible for the victim's death. *See Marty*, 166 Ariz. at 237. A proximate cause may be interrupted when "another cause with which the defendant was in no way connected intervenes, and but for which" the injuries would not have occurred. *Id.* An intervening cause is a superseding event, though, only when unforeseeable, abnormal, or extraordinary. *State v. Bass*, 198 Ariz. 571, 575–76, ¶¶ 11–13 (2000).

¶14 In its final jury instructions, the trial court instructed jurors that:

> The crime of Second Degree Murder requires proof of the following:
>
> Under circumstances manifesting extreme indifference to human life, the defendant recklessly engaged in conduct which created a grave risk of death and thereby caused the death of another.
>
> The Defendant's conduct is reckless if:
>
> 1. The defendant is aware of and consciously disregards a substantial and unjustifiable risk of death.
>
> 2. The risk must be such that disregarding it is a gross deviation from what a reasonable person would do in the situation.

¶15 The second-degree murder instruction identified all elements of the charged offense and accurately tracked the relevant statute. A.R.S. § 13-1104(A)(3); *see State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16 (1998) (court need not give every instruction requested by the defense: "The test is whether the [given] instructions adequately set forth the law applicable to the case"). "[N]o proximate cause instruction is required when the instructions in their entirety properly inform the jury of the elements of the offense, including causation . . . a proximate-cause instruction [need not] be given whenever a causation issue is raised." *State v. Almaguer*, 232 Ariz. 190, 197 n.6, ¶ 17 (App. 2013); *see also Mott*, 187 Ariz. at 546 (proximate cause

instruction not required when the instructions given "instruct the jury on the elements of the crime, including causation," and, in their entirety, adequately state the law).

¶16 Relying on *State v. Shumway*, 137 Ariz. 585 (1983), Sommerfield argues the superseding cause instruction was necessary because jurors could consider the victim's conduct when determining his culpability. In *Shumway*, the undisputed evidence established that the defendant "was not running a red light" and had the right of way when he collided with the decedent's car. *Id.* at 588. Under those facts — which differ materially from those here — the supreme court held that the trial court erred by refusing to give the defendant's requested instruction that left-turn drivers must yield the right-of-way to approaching traffic from the opposite direction. *Id.* at 588.

¶17 Unlike *Shumway*, Sommerfield did not undisputedly have the right of way. Furthermore, the evidence he cites in support of a superseding cause instruction is the ADOT representative's testimony, but that witness simply stated it was possible for eastbound and southbound traffic to simultaneously have a red light while westbound traffic had a green light. Evidence, "not merely an inference making an argument possible," is required to support a jury instruction. *State v. Vassell*, 238 Ariz. 281, 284, ¶ 9 (App. 2015).

¶18 To the extent Sommerfield contends the victim's medication use and/or failure to wear corrective lenses warranted a superseding cause instruction, we disagree. The parties agreed that either Sommerfield or the victim ran a red light and caused the collision. The victim's possible cognitive or visual impairment had no tendency to suggest the color of the light for her direction of travel. Nor would such circumstances constitute a superseding event breaking the natural and continuous chain of events.[3] Furthermore, the jury instructions did not prevent Sommerfield from arguing that he had the right of way — something he did repeatedly. *See*

---

[3] Citing testimony by the State's accident reconstruction expert, Sommerfield also contends the victim was speeding. But that expert testified the victim was traveling 61 miles-per-hour in a 65 mile-per-hour zone. *See State v. Vandever*, 211 Ariz. 206, 208, ¶ 8 (App. 2005) (Speeding was not an intervening event because a collision was "clearly a foreseeable event within the scope of the risk created by [the defendant's] illegal left turn.").

*State v. Bruggerman*, 161 Ariz. 508, 510 (App. 1989) (closing arguments may be considered in assessing adequacy of jury instructions).

¶19        Under these circumstances, the trial court did not abuse its discretion by declining to give Sommerfield's requested causation instructions.

## II.        Evidentiary Ruling

¶20        Sommerfield moved in limine to preclude evidence that he brandished a handgun at another vehicle roughly 30 minutes before colliding with the victim.  He argued the evidence was "not relevant, extremely prejudicial, and inadmissible character evidence."  In response, the State argued:

> [T]he State must not only prove the defendant's conduct was reckless but also that the defendant manifested an extreme indifference to human life.  The gun pointing and the defendant's attempt to hit another car as it passed the Navigator is relevant to why the defendant fled from police.
>
> . . .
>
> The gun pointing is relevant to the defendant manifesting an extreme indifference to human life.  This piece of evidence is why the pursuit which ultimately killed the victim started and it makes it more probable than not the defendant manifested an extreme indifference to human life. The gun pointing is highly probative of the defendant's guilt in this case and is not out-weighed by unfair prejudice. Finally, the State is not using the gun pointing as character evidence; it is not another bad act it is part of the circumstances of the defendant causing the victim's death.

The trial court denied Sommerfield's motion "[f]or the reasons stated in the State's Response."

¶21        While settling final jury instructions, the court questioned the State's request for a character and reputation instruction.  Acknowledging that the instruction had been submitted in error, the prosecutor withdrew it, and the court suggested giving a limiting instruction regarding uncharged acts.  The State objected, explaining that the gun-pointing evidence was not "other act" evidence, but circumstantial evidence of his manifest indifference to human life — an element of second-degree murder.

Concluding Sommerfield's use of a gun was part of a "continuous series" of events, rather than a separate act, the court did not give an "other act" limiting instruction.

**¶22**     "Absent a clear abuse of discretion, we will not second-guess a trial court's ruling on the admissibility or relevance of evidence." *State v. Rodriguez*, 186 Ariz. 240, 250 (1996). We may affirm on any basis supported by the record. *State v. Robinson,* 153 Ariz. 191, 199 (1987).

**¶23**     Arizona Rule of Evidence ("Rule") 404(b) prohibits evidence of other crimes, wrongs or acts to prove the defendant's character to act in a certain way, but allows such evidence for non-propensity purposes, such as showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." By its express terms, the Rule applies only to evidence of "other" crimes, wrongs, or acts. Rule 404(b); *see also State v. Ferrero*, 229 Ariz. 239, 242, ¶ 13 (2012).

**¶24**     The State relied on evidence that Sommerfield pointed a gun at an occupied vehicle to prove continuing manifest extreme indifference to human life on the night in question. The State argued Sommerfield's mental state when brandishing the firearm persisted until he crashed into the victim's car — an inference that was reasonably supported by the evidence. After pointing the gun, Sommerfield continued to engage in conduct that endangered the lives of those around him. He threw objects at an approaching truck as the driver tried to force that vehicle off the road. And once he began driving the Navigator, Sommerfield turned off the headlights, notwithstanding it was dark outside. He repeatedly failed to stop at red lights, choosing to either circumvent intersections or drive through them. At one intersection, he caused an approaching vehicle with the right of way to brake hard and turn sideways to avoid a collision.

**¶25**     Because the gun-pointing evidence had a tendency to prove an element of the offense, it was intrinsic to the crime charged and was properly admitted. *See State v. Salamanca*, 233 Ariz. 292, 295, ¶ 11 (App. 2013) (evidence proving a defendant's *mens rea* "is admissible without regard to Rule 404(b)"). And while the evidence was prejudicial to the defense, it did not suggest that jurors determine Sommerfield's guilt on an improper basis. *See Mott*, 187 Ariz. at 545 (Unfairly prejudicial evidence suggests jurors render a "decision on an improper basis such as emotion, sympathy, or horror.").

**CONCLUSION**

**¶26** For the foregoing reasons, we affirm Sommerfield's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED: AA