NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

LEE CURTIS BRITTON, *Appellant.*

No. 1 CA-CR 17-0554
FILED 3-14-2019

---

Appeal from the Superior Court in Maricopa County
No. CR2016-142842-001
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Randall M. Howe and Judge Jennifer B. Campbell joined.

**M c M U R D I E**, Judge:

**¶1**        Lee Britton appeals his conviction and sentence for unlawful flight from a law enforcement vehicle. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND[1]

**¶2**        While conducting surveillance in an area that had been the subject of numerous complaints, an undercover police officer observed a group of five or six individuals at a bus stop engaging in behavior that appeared consistent with hand-to-hand drug transactions. Before long, two men, Britton and Bobby Archuleta, stepped away from a bus stop and began crossing an adjacent parking lot. As the men walked, the officer saw Britton hand Archuleta an object that appeared to be a silver revolver. When the men reached a maroon car, Britton sat in the driver's seat and Archuleta sat in the front passenger's seat. Britton then drove out of the parking lot and onto a surface street.

**¶3**        Based on the apparent drug and gun activity, two undercover officers followed the car. After Britton drove to a liquor store and parked, two or three women got into the backseat of the car. With the additional passengers in tow, Britton exited the liquor store parking lot and made a wide turn onto a surface street, crossing multiple lanes rather than turning directly into the lane closest to the curb. Observing this traffic violation, the undercover officers decided to stop the car and requested that a uniformed officer driving a marked patrol car conduct the stop.

**¶4**        Soon thereafter, a patrol officer in a marked patrol car arrived, and maneuvered his vehicle directly behind Britton's car. When the patrol officer activated his vehicle's lights and siren, Britton's car rapidly

---

[1]        We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

accelerated. Notwithstanding Britton's failure to stop, the patrol officer did not give chase because no pursuable offense had occurred.

¶5            Within moments, the undercover and patrol units lost track of the car, but it was soon spotted by an air unit. The air unit tracked the car and maintained constant visual contact with the vehicle. The air unit saw it briefly stop, allowing two or more people to exit. The car finally stopped at an apartment complex.

¶6            By the time ground officers caught up with the car, it had been abandoned. While searching the apartment complex for the vehicle's former occupants, one officer located Britton, running away. When the officer chased after him, Britton grabbed a bike and attempted to take it down a flight of stairs. The bike encumbered Britton however, and the officer caught and arrested him.

¶7            The officers searched Britton and his car but failed to find guns, drugs, or any other indicia of criminal activity. Later, officers transported Britton to a police station where he was interviewed. The interviewing officer asked Britton whether he had heard the patrol car's siren and seen its lights. In response, Britton stated, "[n]ot at first." Meanwhile, police officers also apprehended Archuleta. In a search incident to his arrest, officers found a usable amount of marijuana in his pocket.

¶8            The State charged Britton with one count of unlawful flight from a law enforcement vehicle and a jury convicted him as charged. After the jury rendered its verdict, Britton admitted that he was on parole at the time of the offense and had five historical prior felony convictions. The superior court sentenced Britton to a term of five years' imprisonment and he timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### A.     The Court Did Not Abuse Its Discretion By Admitting the Alleged Other-Act Evidence.

¶9            Britton contends the superior court improperly admitted other-act evidence.

¶10           Before trial, Britton moved *in limine* to preclude, among other things, evidence that: (1) Archuleta possessed marijuana at the time of his arrest; (2) Britton appeared to hand Archuleta a chrome revolver; and (3) Britton and/or Archuleta committed hand-to-hand drug transactions.

Citing Arizona Rules of Evidence ("Rule") 402, 403, and 404, Britton asserted the evidence was irrelevant, unfairly prejudicial, and improper character evidence. In response, the State argued that the marijuana evidence was admissible under both Rules 402 and 404 to show Britton's possible motive for fleeing from the marked car. The State also argued that the evidence was more probative than prejudicial because Archuleta's marijuana possession was not attributable to Britton. Concerning the gun and drug transaction evidence, the State acknowledged that officers found no physical evidence that Britton had possessed or transferred guns or drugs. The State argued, however, that an officer's observations that Britton "appeared" to handle a gun and engage in drug transactions were relevant to explain why undercover officers were surveilling him and to prevent the jury from "wrongfully" concluding that "law enforcement officers were improperly targeting" him.

¶11            After a hearing on the motion, the superior court found the challenged evidence was admissible. Specifically, the court determined the marijuana evidence was relevant to show Britton's motive in fleeing, and the gun-transfer and drug-transaction evidence was relevant to explain the officers' states of mind in pursuing Britton.

¶12            At trial, one officer testified that Britton appeared to engage in drug sales and a gun transfer. Britton objected and requested a mistrial, arguing the evidence was irrelevant and unfairly prejudicial. In response, the State countered that it was not alleging that Britton had engaged in the acts; rather, it was eliciting testimony regarding what the officer believed he saw. Denying the motion for mistrial, the superior court found the evidence was "valid and relevant" to explain why the officers were watching Britton. When cross-examined the following day, the officer acknowledged that no drugs or guns were found when Britton was searched incident to his arrest. Likewise, another officer testified that no evidence of criminal activity was found in Britton's vehicle.

¶13            During the settling of the final jury instructions, the superior court remarked that an other-acts limiting instruction "need[ed] to come out," and Britton responded, "[c]orrect." When the court asked the State whether it agreed, the State asserted that it intended to refer to the undercover officer's observations during its closing argument to explain why the police followed Britton. Without objection from Britton, the superior court stated that the police officer's testimony was staying in but the instruction was coming out because there was no evidence of other acts.

¶14 After the parties finished discussing the other jury instructions and the verdict form, Britton requested a limiting instruction, asserting that none of the evidence regarding possible drug activity could be considered to determine guilt. At that point, the superior court invited Britton to submit language for such an instruction, but he failed to do so. Nonetheless, the court admonished the State that it had to limit its argument to the officer's perceptions, noting that the officer's "actual testimony was that he saw behavior consistent" with drug transactions, not that he had witnessed drug transactions, which the court characterized as a "very important distinction." Indeed, the court stated that the only reason the evidence was admitted was "to explain to the jury why an undercover officer was following these defendants."

¶15 In conformity with the superior court's admonition, the State argued in closing that "[t]he State doesn't have to prove the defendant actually passed a gun or engaged in hand-to-hand drug transactions." Indeed, acknowledging that the gun transfer and drug transactions were "not part of [the charged] offense," the State explained that it offered the officer's perceptions regarding "what he thought was happening" to establish "why the officer . . . continued to watch the defendant and wanted to make contact." Britton likewise referred to the officer's observations in his closing argument, stating no evidence showed that Britton was ever involved with guns or drugs, and noting that Archuleta only had a usable amount of marijuana on his person, not enough to sell.

¶16 We review a superior court's ruling on a motion *in limine* for an abuse of discretion. *State v. Gamez*, 227 Ariz. 445, 449, ¶ 25 (App. 2011). "Absent a clear abuse of discretion, we will not second-guess a trial court's ruling on the admissibility or relevance of evidence." *State v. Rodriguez*, 186 Ariz. 240, 250 (1996).

¶17 Rule 404 governs the admission of character and "other act" evidence. Rule 404(b) prohibits evidence of other crimes, wrongs or acts to prove the defendant's character to act in a certain way, but allows such evidence for non-propensity purposes, such as showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." By its express terms, Rule 404(b) applies only to evidence of "other" crimes, wrongs, or acts. *See State v. Ferrero*, 229 Ariz. 239, 242, ¶ 13 (2012).

¶18 Before admitting other-act evidence, the superior court must find: (1) there is clear and convincing evidence the defendant committed the other act; (2) the evidence is relevant under Rule 402; (3) the evidence is

5

offered for a proper purpose under Rule 404(b); and (4) the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice under Rule 403. *State v. Terrazas*, 189 Ariz. 580, 584 (1997); *State v. Mott*, 187 Ariz. 536, 545 (1997). Upon admission of such evidence, and if requested by the defense, the court must also provide an appropriate limiting instruction under Rule 105. *Mott*, 187 Ariz. at 545.

**¶19** In general, relevant evidence is admissible unless it is otherwise precluded by the federal or state constitution, an applicable statute, or rule. Ariz. R. Evid. 402. Evidence is relevant if it has "any tendency" to make a fact of consequence in determining the action "more or less probable than it would be without the evidence." Ariz. R. Evid. 401. Relevant evidence may be excluded, however, if its probative value "is substantially outweighed" by a danger of unfair prejudice. Ariz. R. Evid. 403.

### 1. Evidence that Britton Engaged in Hand-To-Hand Drug Transactions and A Gun Transfer Was Admissible For A Proper Purpose.

**¶20** In this case, the State presented evidence that an undercover officer believed he saw Britton engage in conduct consistent with hand-to-hand drug transactions and a gun transfer. As framed by the State at trial, this challenged evidence explained why the officer focused considerable attention on Britton and requested a traffic stop after Britton committed only a minor traffic violation. In other words, the State did not introduce the evidence to show that Britton had committed acts relating to guns and drugs, but to show that an officer believed he did. Because the officer's perceptions, as qualified by his own account and limited by the State's argument, do not constitute evidence of actual "other acts," they are not subject to a Rule 404 analysis. Therefore, contrary to Britton's contention, the State did not need to offer proof that Britton actually engaged in hand-to-hand drug transactions or a gun transfer because it did not allege that he had.

**¶21** Turning to Britton's relevance and prejudice arguments, evidence of the officer's perceptions was relevant to complete the story and explain why law enforcement devoted substantial resources to stopping Britton's car. *See Ferrero*, 229 Ariz. at 244, ¶ 23. Britton argues that "there was no need to provide context to the officers' decision" to make a traffic stop because the jury was not charged with determining its propriety. The jury heard evidence that undercover officers, patrol officers, and an air unit pursued Britton's vehicle, and the officers donned tactical gear and drew

weapons as they searched for him at the apartment complex. Absent context, the jurors would have been left to speculate why so many law enforcement officers were involved in a simple traffic stop. Therefore, the evidence was relevant, and its probative value outweighed any attendant prejudice.

### 2. Evidence that Archuleta Possessed Marijuana was Admissible for a Proper Purpose.

¶22        Although Britton disclaims any argument that Archuleta's possession of marijuana qualified as an "other act" for purposes of Rule 404, he contends the evidence was nonetheless inadmissible because the State failed to prove that he knew Archuleta possessed the marijuana. Specifically, relying on Rule 104, Britton contends the marijuana evidence was irrelevant absent a showing that he knew of its presence in the car. *See* Ariz. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.").

¶23        Contrary to Britton's assertion, the State did not need to prove that he had actual knowledge of the marijuana because the fact that Archuleta possessed marijuana, alone, provided a sufficient basis for the jury to infer a motive to flee. In other words, the evidence tended to make it more probable that Britton attempted to elude a pursuing marked patrol car, whether he did so of his own volition or at Archuleta's behest. Although this evidence of a potential motive may have been harmful to Britton's defense, it did not have an undue tendency to suggest a decision on an improper basis, and the State carefully limited the relevant scope of the marijuana evidence to motive during its closing argument. *See State v. Lee*, 189 Ariz. 590, 599–600 (1997) (explaining not all harmful evidence is unfairly prejudicial, only evidence that "has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror" (quoting *Mott*, 187 Ariz. at 545)).

### 3. The Absence of a Limiting Instruction was not Error.

¶24        Even if not mandated under Rule 404, Britton argues the superior court erred by not providing a limiting instruction. *See* Ariz. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."). As reflected in the record, however, Britton acquiesced to the removal of an other-acts limiting instruction and failed to

submit an alternative written limiting instruction when invited to do so. Accordingly, Britton waived this claim. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).

**¶25** Moreover, the superior court admonished the State that it could use the officer's perceptions only to complete the story, and the State, in turn, similarly admonished the jury. Likewise, the State informed the jurors that they should consider the marijuana evidence to assess motive. While the court did not directly instruct the jurors to restrict their consideration of the evidence to its proper scope, the State effectively did so in its closing argument.

**¶26** Nonetheless, even if the challenged evidence may be deemed inadmissible or the absence of an attendant limiting instruction erroneous, any error was necessarily harmless. Under A.R.S. § 28-622.01, "[a] driver of a motor vehicle" commits unlawful flight by "willfully flee[ing] or attempt[ing] to elude a pursuing [and appropriately marked] official law enforcement vehicle." Here, the unchallenged evidence against Britton was overwhelming. Numerous officers positively identified him as the driver of the car and testified that they witnessed him flee and attempt to elude a marked patrol car with activated lights and siren. When asked whether he saw the patrol car's lights and heard its siren, Britton responded, "[n]ot at first." By implication, he admitted that at some point during the chase, he perceived the patrol car's activated lights and siren. He never pulled over and ultimately abandoned his vehicle and fled on foot. Given the strength of this evidence, the superior court's admission of the challenged evidence and omission of a limiting instruction, even if erroneous, was harmless beyond a reasonable doubt.

**B.** **The Court Did Not Abuse its Discretion by Denying the Motion to Change Counsel.**

**¶27** Britton contends the superior court violated his constitutional right to counsel by denying his motion for a change of counsel. Specifically, Britton argues that he and his appointed attorney had a breakdown in communication and the court failed to conduct the necessary inquiry regarding the basis for his motion.

**¶28** Early in the prosecution, Britton's first appointed attorney moved to withdraw the office of the public defender, citing ethical rules and an unspecified conflict of interest. The superior court granted the motion and appointed a second attorney as counsel of record ("appointed counsel").

¶29        Approximately two months later, Britton requested the appointment of new counsel, asserting, without explanation, a "break in communication" and a "conflict of interest." Appointed counsel then moved to continue the trial date, arguing a continuance was warranted, in part, because Britton sought to retain private counsel.

¶30        At a final trial management conference held shortly thereafter, the superior court asked Britton whether he wanted to change counsel. Britton confirmed that he wanted a new attorney, and the court asked him to explain the nature of his conflict with appointed counsel. Britton responded that appointed counsel had previously represented his cousin "some years" before and his aunt recommended that he obtain another attorney. When the court questioned appointed counsel about this prior representation, counsel vaguely recalled representing Britton's cousin, but informed the court that Britton intended to retain a named private attorney. Explaining that the funds to retain private representation would not become available to Britton until the following month, appointed counsel requested a continuance. The court found that appointed counsel was not disqualified simply because Britton's cousin did not "like[] the outcome in his case," and therefore Britton had failed to identify a "legally recognized conflict of interest." Nonetheless, the court acknowledged that Britton had a right to retain counsel of his choice and continued trial. Because new counsel had yet to be retained, however, the court declined to relieve appointed counsel of his duties and scheduled a status conference for the following month based on Britton's representation that he would retain private counsel by then.

¶31        At the scheduled status hearing, appointed counsel informed the superior court that Britton had not retained private counsel, but intended to do so. When the court addressed Britton directly, he confirmed his intent to retain a private attorney. At that point, the court reminded Britton that any privately retained attorney would need to be prepared to proceed to trial as scheduled. The court also informed Britton that it had reviewed his file and, based on the previous request to change counsel, suspected that he wanted his attorney to do something that was either ethically or legally proscribed. Noting its own familiarity with appointed counsel's competence and performance, the court rejected Britton's claim of a failure to communicate but acknowledged that if he "want[ed] to hire [his] own counsel" he could do so. Notwithstanding Britton's repeated assurances that he would obtain private counsel, the record reflects that he failed to do so, and appointed counsel represented him at trial.

¶32 An indigent criminal defendant has a right to competent counsel, but "is not entitled to counsel of choice, or to a meaningful relationship with his or her attorney." *State v. Torres*, 208 Ariz. 340, 342, ¶ 6 (2004) (internal quotation omitted). A complete breakdown in attorney-client communication or an irreconcilable conflict between a defendant and appointed counsel, however, violates a defendant's constitutional right to counsel. *Id.*

¶33 When a defendant requests substitution of counsel, the superior court must inquire regarding the basis for the request. *Torres*, 208 Ariz. at 343, ¶ 7. "The nature of the inquiry" required depends "upon the nature of the defendant's request." *Id.* at ¶ 8. Although a court "must conduct a hearing" when a defendant sets forth "sufficiently specific, factually based allegations" supporting a request for new counsel, a formal hearing is unnecessary to address "generalized complaints." *Id.*; *see also State v. Gomez*, 231 Ariz. 219, 225–26, ¶ 29 (2012) ("A trial judge is not required to hold an evidentiary hearing on a motion for change of counsel if the motion fails to allege specific facts suggesting an irreconcilable conflict or a complete breakdown in communication, or if there is no indication that a hearing would elicit additional facts beyond those already before the court.").

¶34 When the superior court holds a formal hearing, "the defendant bears the burden of demonstrating that he has a genuine irreconcilable conflict with his counsel or that there has been a total breakdown in communications." *Torres*, 208 Ariz. at 343, ¶ 8. "[T]o prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *State v. Paris-Sheldon*, 214 Ariz. 500, 505, ¶ 12 (App. 2007) (quoting *United States v Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)). "If a defendant establishes a total breakdown in communication, or an irreconcilable conflict with his attorney, then the trial judge must grant the request for new counsel." *Torres*, 208 Ariz. at 343, ¶ 8. We review a superior court's denial of a request for new counsel for an abuse of discretion. *State v. Cromwell*, 211 Ariz. 181, 186, ¶ 27 (2005).

¶35 Acknowledging the superior court properly asked about the alleged conflict of interest, Britton nonetheless contends the court failed to inquire about the alleged breakdown in communication sufficiently. Indeed, noting appointed counsel did not directly challenge his claim of a breakdown in communication, Britton argues that his mere allegation was sufficient to warrant a change of counsel.

¶36        Contrary to this contention, Britton had to put forward specific, fact-based allegations that demonstrated either a severe and pervasive conflict with his attorney or the near absence of contact such that meaningful communication with appointed counsel was impossible. Instead, Britton asserted only bare allegations in his written motion, and, when the court addressed him directly and asked about his conflict with appointed counsel, he merely stated that counsel had previously represented his cousin. Although the court repeatedly provided him the opportunity to speak during two hearings, Britton failed to present any specific, fact-based allegations supporting a change of counsel. Therefore, given the limited information Britton submitted to the court, no further inquiry was required.

¶37        Furthermore, the record reflects that appointed counsel told the court that he repeatedly contacted Britton after Britton filed the motion and between hearings, and Britton did not deny these communications, belying any claim that appointed counsel and Britton had such minimal contact that meaningful communication was not possible. Finally, Britton consistently assured the court that he intended to retain private counsel, negating his written request for the appointment of new counsel. For these reasons, the superior court was not compelled to hold a formal hearing or otherwise inquire further before summarily denying Britton's motion.

## CONCLUSION

¶38        We affirm Britton's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED: AA