[Civil No. 3766. Filed June 10, 1936.]

[58 Pac. (2d) 525.]

J. H. ARMER, C. CURNOW and L. F. QUINN, as the Board of Supervisors of Gila County, State of Arizona, Appellants, v. WILLIAM WADE, H. GRADY HARRISON and LEONA FUEL, as the Board of Trustees of School District No. 10, Gila County, State of Arizona, and JEFF McIN-TURFF, O. B. McKINNEY and HENRY KEN-DALL, as the Board of Trustees of School District No. 5, Gila County, State of Arizona, Appellees.

(1)

Mr. Edward W. Rice, for Appellants.

Mr. Rouland W. Hill, for Appellees.

ROSS, J.—The board of trustees of school district No. 10 and the board of trustees of school district No. 5, of Gila county, each brought a separate action in *mandamus* against the board of supervisors of said county to compel the latter to print, prepare, and offer for sale improvement bonds theretofore voted by the qualified electors of said school districts for the erection of school buildings. The defendants demurred to the complaint in each case on the ground that it failed to state facts sufficient to constitute a cause of action. The demurrers were overruled and judgment entered for plaintiffs as prayed. The defendants have appealed.

The material facts in both cases being the same, they were consolidated, tried and decided together.

The plaintiffs acquiesce in the correctness of defendants' statement of the ultimate facts, which is as follows:

"The taxable property within School District Nos. 5 and 10 of Gila County is assessed at $123,642 and $90,443, respectively. The two districts desired to incur debts to the extent of $11,000 and $9,000, respectively, for the erection of school houses, or

8.9% and 9.951% of their respective assessed valuations. By formal resolutions of their respective school boards, the two districts requested the Board of Supervisors of Gila County to call school elections to determine whether bonds of the districts should be issued in these amounts for these purposes. The elections were regularly called and duly held and resulted in the authorization of the indebtedness in each district—in School District No. 5 by a vote of 77 to 3, and in School District No. 10 by a vote of 66 to 1. The Board of Supervisors canvassed the votes and certified the results according to law, and advertised the bonds for sale, but no bids were received for them. The School Districts thereupon requested the Board to readvertise and reoffer the bonds for sale, but meanwhile, a doubt having arisen as to the authority of the districts, in view of Paragraph 1016 of the Revised Code of 1928, to incur an indebtedness in excess of 6% of the assessed valuation, the Board declined to comply with these requests.''

 The bonds were voted under article 5, chapter 60 (sections 2657–2677), Revised Code of 1928. Since the elections are admitted to have been regular, the provisions of article 5 concerning elections and procedure thereunder are omitted. The pertinent section to the present controversy is section 2657, reading as follows:

''§ 2657. *Increasing indebtedness above four per cent of valuation.* The aggregate indebtedness of any county, school district, city, town or like municipal corporation may be increased above four per centum of the value of the taxable property in such political subdivision in the manner herein provided; such value to be ascertained as provided by Section 4 of Article IX of the constitution of the state.'' (We here interpolate that the reference in section 2657 to section 4 of article 9 of the Constitution is clearly a mistake. It should have been to section 8 of said article.)

Section 8, article 9, of the Constitution forbids a county, city, town, school district or other municipal corporation from becoming indebted for any purpose to an amount exceeding 4 per centum of its taxable property, the value of which is to be ascertained by the last assessment for state and county purposes previous to incurring such indebtedness, unless the question of increase above that amount is approved at an election by a majority of the property taxpayers, who are also qualified electors; and forbids any county or school district from becoming indebted in any amount, under any circumstances, exceeding 10 per centum of such taxable property. The limitation of indebtedness of incorporated cities and towns for supplying them with water, artificial light, or sewers, when the works are owned and controlled by the municipality is 15 per centum additional on the taxable property, ascertained by the last assessment for city or town purposes.

The first legislature after statehood, in its first Regular Session, passed chapter 29, Laws 1912 (chapter 2, title 52, pars. 5266–5285, Rev. Stats. Ariz. 1913 [Civ. Code]), supplementing this constitutional provision, and therein provided that school districts might enlarge their indebtedness above 4 per centum of the value of their taxable property (ascertained as provided in section 8, art. 9, *supra*), by an election as provided therein. Article 5, chapter 60, *supra*, of which section 2657 is a part, is a revision of chapter 29, *supra,* and, while the verbiage may be somewhat different, includes for practical purposes the same provisions as the earlier act.

It will be noted that the authority to enlarge the indebtedness above 4 per centum mentions no maximum. By the terms of section 2657, if literally construed, a school district may increase its indebtedness

to any amount above 4 per centum. But, since such authority or power was extended by the legislature for the purpose of conforming with section 8, article 9, of the Constitution, the maximum is as certainly limited as if there had been inserted the words "ten per centum" of the value of the taxable property, to be ascertained from the last assessment for state and county purposes.

So we conclude that construing the constitutional provision and section 2657 together, school districts are authorized and empowered to incur indebtedness up to, but not exceeding, 10 per centum of the value of their taxable property as ascertained at the last previous assessment for state and county purposes, unless there is some other provision of law that compels a different construction.

 It is the contention of defendants that section 1016, Revised Code of 1928, does limit by its terms, when properly construed, the amount of indebtedness that a school district may incur to 6 per centum of the value of its taxable property ascertained as above.

The first state legislature, at its Regular Session, also enacted chapter 77, Laws of 1912, providing for a general and uniform public school system. This chapter (section 41 et seq.) was incorporated into the Civil Code, Revised Statutes of Arizona 1913, as chapter 9, title 11 (paragraphs 2733–2753 [Civ. Code]). Section 48 of chapter 77, *supra,* and paragraph 2740 of chapter 9, title 11, *supra,* are identical and, with associated sections, provide the method to be pursued by the board of trustees of a school district to enable the district to issue its bonds to pay for school buildings and for other purposes, and it is therein provided:

"That no school district shall issue bonds for the purposes herein specified to an amount in the aggre-

gate, including the existing indebtedness, exceeding six per cent on the value of the taxable property within such school district, to be ascertained by the last assessment of state and county taxes previous to the issuing of such bonds.''

Thus was created an apparent conflict. In other words, the legislature by chapter 29, *supra,* authorized a school district to become indebted for the purposes therein stated up to the constitutional limit of 10 per centum of the value of its taxable property and by chapter 77, *supra,* limited its right to become indebted to 6 per centum of its taxable property. This situation no doubt was called to the attention of the legislature, for in 1917, at the Regular Session, there was enacted chapter 53, which, in effect, provided that if the proposed bond issue together with other indebtedness created a debt of the school district up to or less than 4 per centum of the value of its taxable property the procedure to be followed in issuing and selling its bonds should conform with paragraphs 2736 to 2749, both inclusive, of the Civil Code, Revised Statutes of Arizona 1913, but that if the amount thereof, together with other indebtedness, exceeded 4 per centum of the valuation the procedure to be followed should be in conformity with chapter 2, title 52 of the 1913 Code.

Section 2 of said chapter 53 undertakes to validate all bonds or other evidences of indebtedness theretofore issued by any school district, whether sold by the trustees or by the board of supervisors of the county.

Thereafter, in 1928, when the laws of the state were revised, there was incorporated into the section (1016), revising section 48 of chapter 77, Laws 1912 (paragraph 2740, Rev. Stats. Ariz. 1913 [Civ. Code]), this provision:

"That no school district shall issue bonds for the purposes herein specified under the authority hereof to an amount in the aggregate, including the existing indebtedness, exceeding four per cent on the value of the taxable property within such school district, to be ascertained by the last assessment of state and county taxes previous to the issuing of such bonds, and not exceeding six per cent under any other statutory authority."

In the light of section 8, article 9, of the Constitution, and the different legislative acts concerning the right and power of school districts to become indebted, we are to determine the proper meaning or construction to be placed upon the legislature's most recent language, found in section 1016 and just quoted. Counsel for defendants contends that such provision should be construed to read as follows:

"And provided further that no school district shall issue bonds for the purposes herein specified under any other statutory authority to an amount in the aggregate, including the existing indebtedness, exceeding 6% on the value of the taxable property within such school district, to be ascertained by the last assessment of state and county taxes previous to the issuing of such bonds."

He gives various reasons for his contention, but we are not impressed with them. It appears to us quite conclusively that section 2657, *supra,* both in its original form and its present wording, intended that a school district might become indebted up to the full constitutional limit of 10 per centum of the value of its taxable property. When the legislature discovered that chapter 77, Laws of 1912, restricted the total indebtedness to 6 per centum, it immediately, in chapter 53, Laws of 1917, undertook to rectify the conflict and therein recognized that school districts had incurred indebtedness under two separate acts and validated debts to the limit of 10 per centum of

the value of the taxable property of the school district. The provision in section 1016, in view of these facts, is not difficult to understand. It says, in effect, that in no event shall the indebtedness of a school district exceed 10 per centum of the value of its taxable property, but that it may amount to that percentage, to wit, up to 4 per centum under section 1016 and 6 per centum under "any other statutory authority," as under section 2657, *supra.*

The provision in section 1016 should be read and construed in view of the language of section 8, article 9, of the Constitution, which prohibits a school district from becoming indebted to an amount exceeding "four per centum" of the value of its taxable property, except when by a majority vote of the qualified electors they give their assent to its becoming indebted up to 10 per centum of the value of its taxable property. Since the provision in section 1016 was changed into its present form, no conflict exists between it and section 2657. Both permit the school district to become indebted up to 10 per centum of the value of the taxable property of such district. And, since the procedure followed in voting the bonds was under chapter 60, article 5 (section 2657, et seq.), and the indebtedness proposed is less than the maximum permitted by the Constitution and fixed by legislative acts, we conclude the court was correct in overruling the defendants' demurrers and entering judgment for plaintiffs.

LOCKWOOD, C. J., and McALISTER, J., concur.