NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DONTEA ANTWAN WORKS, *Appellant.*

No. 1 CA-CR-22-0150
FILED 01-09-2025

Appeal from the Superior Court in Maricopa County
No. CR2020-114041-001
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kristen Reller
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Angela K. Paton joined.

**F O S T E R**, Judge:

¶1     Dontea Works appeals his convictions for aggravated assault, misdemeanor assault and disorderly conduct. For the following reasons, this Court affirms.

## FACTS AND PROCEDURAL HISTORY

¶2     This Court "view[s] the facts in the light most favorable to sustaining the conviction." *State v. Huante*, 252 Ariz. 191, 192, ¶ 2 (App. 2021) (citation omitted). Works was in a relationship with Audrey.[1] They had a child in common. On the night of April 1, 2020, Works accused Audrey of being unfaithful to him, which she denied. During the ensuing argument, Works wrapped his arm around Audrey's neck and began to strangle her. After Works released Audrey, she grabbed her children and left their home for several hours before returning in the early morning hours of April 2.

¶3     When Audrey returned, Works said he wanted to reconcile and have sexual relations with Audrey. Although she was tired and told Works she did not want such contact, Works proceeded anyway.

¶4     Later that day, Works again accused of Audrey of infidelity. He pulled Audrey from the bed onto the floor, got on her back and started strangling her in a headlock. Works then jammed his fist into Audrey's mouth, causing her lip to bleed, and demanded Audrey confess. Eventually, Audrey told Works what he wanted to hear, and he let her go. She grabbed her children and went to her vehicle, but Works followed and got into the vehicle.

---

[1] This Court uses pseudonyms to protect the identity of victims and witnesses. *See, e.g.*, *State v. Agueda*, 253 Ariz. 388, 389, ¶ 2 n.1 (2022); Ariz. R. Sup. Ct. 111(i).

¶5          Audrey drove to a gas station and stopped next to a police vehicle already parked there. Audrey rolled down her window and sought help; she was crying, bruised around her neck and bleeding from her lip. Works was arrested and Audrey was taken to a family advocacy center.

¶6          At the center, a forensic nurse, one who cares for patients who experienced violence, examined Audrey. The nurse documented 14 injuries and also performed a sexual assault examination. After the examination, a police detective interviewed Audrey, and she again detailed the strangulations and sexual encounter.

¶7          The State charged Works with committing four domestic violence offenses: aggravated assault "on or about April 1," aggravated assault "on or about April 2," misdemeanor assault and disorderly conduct. Later, the State alleged three aggravating circumstances: that the offenses (1) involved the "infliction or threatened infliction of serious physical injury"; (2) caused the victim "physical, emotional or financial harm"; and (3) "w[ere] committed in the presence of a child." A.R.S. § 13-701(D)(1), (9), (18).

¶8          Works was tried by a jury over four days in January 2021. Between the first two days of trial, Works filed a motion *in limine* to preclude, among other things, mentioning evidence of any uncharged sexual assault allegations. The State responded that the evidence that Works "coerced sexual intercourse shortly before the second strangulation is probative of the reasonableness of [Audrey's] fear," "is intrinsic to the course of events" and "impacted [Audrey's] state of mind during the strangulation." The court and parties discussed the motion, and the court found the uncharged sexual assault "intrinsic between the two acts of the alleged strangulation," probative as to the charged offenses, and "not unfairly prejudicial."

¶9          The State called Audrey to testify on the second day of trial. But after providing her name and admitting she had a relationship with Works, Audrey testified she did not remember events from the days of the incidents. In response, the prosecutor asked Audrey about her desire to testify that day, whether Audrey was concerned for her safety because of Works or his friends and recent damage to Audrey's car. Audrey answered she did not "like being the center of attention," denied being concerned for her safety, but admitted, "I remember saying that I assumed it was [Works'] girlfriend [who damaged the car]."

¶10        The forensic nurse who examined Audrey also testified. The nurse read part of the report she prepared when she examined Audrey, including their conversation about the sexual encounter, which was also admitted into evidence.

¶11        The jury found Works guilty of three offenses: (1) aggravated assault on April 2, (2) misdemeanor assault, and (3) disorderly conduct. The court proceeded to the aggravation phase, where the jury found two aggravating factors: (1) Works "was on felony probation" at the time he committed the offenses and (2) he "caused physical, emotional or financial harm to the victim." Works was not present on the last day of trial, so the court issued a bench warrant for his arrest. Works' counsel moved to quash the warrant, but the court denied the motion. His counsel then moved for a new trial, which the court also denied.

¶12        Works was arrested on the bench warrant in February 2022, over a year after his conviction. At sentencing, the court found Works had two or more historical prior felony convictions, making him a category three repetitive offender. A.R.S. § 13-703(C). The court sentenced Works to the presumptive term of 10 years' imprisonment for the aggravated assault, with 118 days presentencing credit, and sentenced him to two three-month jail terms for the misdemeanor assault and disorderly conduct with credit for time served. A.R.S. §§ 13-703(J) and -707(A)(1).

¶13        Works timely appealed. The parties jointly moved to stay the appeal and remand for proceedings consistent with the recent Supreme Court opinion, *State v. Brearcliffe*, 254 Ariz. 579 (2023). This Court granted the motion, stayed the appeal and remanded the case because *Brearcliffe* could have impacted this Court's jurisdiction over the case. Over a year later, the State conceded Works did not knowingly, intelligently and voluntarily waive his right to appeal, even though he failed to appear over 90 days between the jury's determination of guilt and sentencing. *See* A.R.S. § 13-4033(C); Ariz. R. Crim. P. 26.3(a)(1)(C). The State moved this Court to lift the stay, which this Court granted.

¶14        This Court has jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031 and -4033(A)(1).

**DISCUSSION**

¶15        Works contends the court erred by admitting evidence of an "uncharged sexual assault" and threats made against the victim to prevent her from testifying.

## I.     The court properly admitted evidence of the "uncharged sexual assault."

**¶16**          Works first argues the court erred by finding the evidence of an uncharged sexual assault was intrinsic evidence. This Court "review[s] the court's evidentiary rulings for an abuse of discretion." *State v. Strong*, ___ Ariz. ___, ___, ¶ 45, 555 P.3d 537, 553 (2024) (citation omitted). This Court "will affirm the trial court's ruling if the result was legally correct for any reason." *State v. Carlson*, 237 Ariz. 381, 387, ¶ 7 (2015) (cleaned up).

**¶17**          The intrinsic evidence doctrine's "premise is that certain acts are so closely related to the charged act that they cannot fairly be considered 'other' acts, but rather are part of the charged act itself." *State v. Ferrero*, 229 Ariz. 239, 242, ¶ 14 (2012) (citation omitted). Intrinsic evidence either "(1) directly proves the charged act, or (2) is performed contemporaneously with and directly facilitates commission of the charged act." *Id.* at 243, ¶ 20 (citation omitted). But intrinsic evidence "may not be invoked merely to 'complete the story' or because [the] evidence 'arises out of the same transaction or course of events' as the charged act." *Id.* Here, the court found the evidence of a sexual encounter "intrinsic between the two acts of the alleged strangulation" but did not expound on its reasoning.

**¶18**          The State argued in its closing argument and its answering brief that the sexual encounter was evidence that supported the misdemeanor assault charge and conviction. This Court agrees. The misdemeanor assault charge required proof that Works knowingly or intentionally caused a physical injury to Audrey. *See* A.R.S. § 13-1203(A)(1). Audrey's description of the sexual encounter was that Works "came up behind" her and "kept trying and trying and did his thing." She described feeling "hurt," "painful," "sore" and "ripped down there" afterward. The jury instructions for the misdemeanor assault did not specify when the injury occurred, and even the State's initial complaint alleged the injury occurred "on or between April 1[ ] and April 2." The evidence of the sexual encounter directly proved the misdemeanor assault, and some jurors may have found Works committed the misdemeanor assault during the sexual encounter.  The court did not err by admitting the evidence as intrinsic.

**¶19**          Because the superior court correctly admitted the evidence, this Court need not address Works' argument that the evidence was inadmissible under Arizona Rule of Evidence 404(b). *Carlson*, 237 Ariz. at 387, ¶ 7 ("[This Court] will affirm the trial court's ruling if the result was legally correct for any reason." (cleaned up)); *Mahar v. Acuna*, 230 Ariz. 530,

535, ¶ 19 n.9 (App. 2012) ("Because [this Court] ha[s] resolved the appeal on other grounds, we need not address this issue.").

## II. Works fails to show fundamental, prejudicial error resulted from the State's questioning about threats made against Audrey.

**¶20** Works also contends the court erred by allowing the State to insinuate he threatened Audrey to prevent her from testifying. Because Works never objected to the State's line of questioning, this Court reviews for fundamental, prejudicial error. *State v. Perez-Gutierrez*, ___ Ariz. ___, ___, ¶ 18, 548 P.3d 1102, 1107 (2024). A defendant can establish fundamental error by showing one of three prongs: (1) "the error went to the foundation of the case," meaning "it relieve[d] the prosecution of its burden to prove a crime's elements, directly impact[ed] a key factual dispute, or deprive[d] the defendant of constitutionally guaranteed procedures"; (2) "the error took from the defendant a right essential to his defense," meaning "it deprive[d] the defendant of a constitutional or statutory right necessary to establish a viable defense or rebut the prosecution's case"; or (3) "the error was so egregious that [the defendant] could not possibly have received a fair trial," meaning the error "so profoundly distort[ed] the trial that injustice is obvious." *State v. Escalante*, 245 Ariz. 135, 141–42, ¶ 18–21 (2018). "If the defendant establishes fundamental error under prongs one or two, he must make a separate showing of prejudice." *Id.* at 142, ¶ 21 (citation omitted).

**¶21** Works seems to argue the State lacked evidence that he threatened Audrey but still sought to insinuate he did so through questioning. He cites *State v. Holsinger*, 124 Ariz. 18 (1979), for the proposition that "[a] prosecutor may not accomplish with insinuation what it cannot do directly." In *Holsinger*, the court concluded the prosecutor's questioning "ha[d] no basis in fact" and was improper because the "question clearly implied that the defendant had a long criminal record when, in fact, she did not." 124 Ariz. at 21.

**¶22** But the situation is different when prosecutors have a reasonable basis for their questions. "[P]rosecutor[s] ha[ve] latitude to explore any bias that [they] ha[ve] a reasonable basis to believe exist[s]." *State v. Arias*, 248 Ariz. 546, 558, ¶ 43 (App. 2020). This is because "the jury has a right to know any fact which tends to show a witness is biased, prejudiced or hostile in passing on that witness' credibility." *State v. Hallman*, 137 Ariz. 31, 36 (1983) (cleaned up); *see also State v. Soto-Fong*, 187 Ariz. 186, 197–98 (1996). Courts may even allow questions about whether people have attempted to intimidate a witness. *See Turley v. State*, 48 Ariz.

61, 81 (1936). Here, Audrey testified someone damaged her car, she assumed Works' girlfriend was responsible and she informed the prosecutor of her suspicion. The court did not err by allowing the State to question Audrey about these events.

**¶23** But even assuming error, Works bears the burden of proving prejudice which he has failed to do. Audrey testified she was not concerned for her safety to testify. She also testified that while she told the prosecutor she assumed Works' girlfriend caused the damage, she was not certain, "did not have proof" and it could have been someone else, such as a neighbor, who did it. Further, the jury was properly instructed that the prosecutor's questions were not evidence, and courts presume the jury follows instructions. *See State v. Acuna Valenzuela*, 245 Ariz. 197, 217, ¶ 77 (2018).

**¶24** The prosecutor's questioning did not go to the foundation of Works' case, deprive him of an essential right or distort the trial. *See Escalante*, 245 Ariz. at 141, ¶¶ 18–20. Works has failed to show fundamental, prejudicial error.

## CONCLUSION

**¶25** For the reasons above, Works' convictions are affirmed.

